Lynn **ELKINGTON** as Guardian Ad Litem for C——, a minor, Plaintiff and Respondent,

v.

Rex **FOUST**, Defendant and Appellant.

No. 16298.

Supreme Court of Utah.

Sept. 19, 1980.

CROCKETT, Chief Justice:

Defendant Rex Foust appeals from a jury verdict which found that he had engaged in a course of sexually assaulting and abusing his adopted daughter plaintiff C____ from the time she was nine years old until she left home at age sixteen, for which the jury assessed damages: general $10,000, specials $2,600, and punitive $30,000.

The record discloses only two issues raised by the defendant which give us any serious concern: (1) the matter of instructing the jury as to the consent of the victim as a defense; and (2) whether the damages awarded were excessive.

The plaintiff minor C____ was born in 1960. When she was four years old, her parents Verle and Deon ____ were divorced and her custody was awarded to her mother Deon. Deon was at that time employed by the Hercules Powder Company as the secretary for defendant Rex Foust, an official of that company. This continued until 1969 when they were married. Shortly thereafter, Rex Foust was transferred by his company to Cumberland, Maryland, and the parties moved there. In 1974, defendant Rex Foust adopted C____ as his daughter.

In that same year, the defendant was transferred back to the Hercules plant in Utah and the family moved back here. Meanwhile, C____ lived as a member of the family until January, 1977, when, because of the pressures, distress and illness resulting from the difficulties referred to below, she left the home to reside with her grandparents in Tooele.

The evidence in this case as believed by the jury constitutes a tragic story of child abuse of plaintiff C____ by the defendant.[1] It would be sordid enough involving any minor. But it is intensified by the fact that it appears that the defendant took advantage of his parental role, and of the girl's love and concern for her mother, to engage in activities with her resulting in sexual and psychological abuse and terror which caused her serious and permanent injury.

Steven F. Lowe of Follett & Lowe, Stephen W. Cook of Littlefield, Ritchey, Cook & Peterson, Salt Lake City, for defendant and appellant.

Phil L. Hansen of Hansen & Hansen, Salt Lake City, for plaintiff and respondent.

1. In reciting the facts, we assume that the jury believed those aspects of the evidence which support their verdict. *Gossner v. Dairymen Associates, Inc.*, Utah, 611 P.2d 713 (1980).

It began when C—— was nine years old in an episode in connection with bathing. The defendant got her to manipulate his own privates, then with his finger deflowered her virginity, causing such pain that it brought her to tears. Familiarities of this character continued and progressed into episodes of his having intercourse with her intermittently. Involved therein were various favors granted or withheld for his purposes; and combined with this, warnings of secrecy and threats of dire consequences to her mother and the family if she should tell anybody.

C—— testified to numerous occasions of sexual abuse, that she lived in fear of violence if she refused to submit to the defendant's desires, and that the reason she did not tell her mother what was happening was because "I was scared, and I didn't want to hurt my mother.... He told me, it would hurt my mother and we would be split up." The evidence is that she suffered mental anguish and physical illness resulting in severe headaches, abdominal pain, nausea and vomiting, for which reasons she was hospitalized twice. This distressful situation continued until she was sixteen, when she managed the courage and ingenuity to escape from it and went to live with her grandfather in Tooele.

The testimony of Dr. Richard C. Ferry, a psychiatrist who has extensively examined and is treating C——, includes various expressions as to his findings and opinions: that she suffers from a complexity of psychological conditions which have caused a deep-seated neurosis and distortion of her personality; that this includes severe emotional disturbances, fears and anxieties, disorientation and depression, in which is involved an overwhelming sense of guilt, which manifests itself in difficulty in having a sense of self-esteem and well-being. He further states that she has, in effect, been robbed of her childhood and that, because that cannot be relived, the values and the stability which are normally realized from a wholesome childhood are not restorable, but are permanently lost.

He also testified: that her neurosis causes her to suffer inordinate fears about men and the harm she believes they could cause her to express her desire not to want to marry or have children. All of this has resulted in deep-seated scars which will persist throughout her lifetime. Wherefore, she requires, and will most likely continue to require, psychotherapy and possibly medication.

The defendant's charge of error of main concern here is that the trial court failed to instruct the jury correctly on consent as a defense. The essence of the position essayed by him is stated in his request:

You are instructed as a matter of law that if you find that the plaintiff consented to the conduct of the defendant towards her person that she cannot recover damages for such conduct or for the harm resulting from it.

The trial court refused that request and, taking the opposite view, instructed the jury:

You are instructed that consent by the plaintiff to the conduct of the defendant, if any so existed, is no defense or justification to the acts complained of by the plaintiff.

 &ast; &ast; &ast; &ast; &ast; &ast;

It is noted that with respect to punitive damages the trial court included the instruction that:

... in considering the issue of exemplary or punitive damages, you may consider all of the conduct of the defendant and the plaintiff in determining whether and in what amount, if any, plaintiff should be entitled to punitive damages.

Focusing attention first upon the latter part of the instruction: Telling the jury that with respect to the issue of punitive damages they could consider "all of the conduct of the defendant and the plaintiff" would, of course, include the matter of consent. The defendant makes no complaint about that aspect of the instructions.

Upon comparison of the defendant's request with the instructions given by the court, it appears that the issue was squarely

presented: whether the trial court should have instructed the jurors that if they found that the girl consented to the defendant's conduct she could not recover at all.

■ Defendant cites authorities to the effect that generally consent is a defense to a willful tort, with which we have no disagreement.[2] But we do not see them as having any application to the instant situation for two reasons: because the plaintiff was a minor and incapable of giving consent to acts of this nature;[3] and because the defendant is precluded from taking advantage of any consent he seduced or coerced her into giving to engage in such activities. It would be an agreement for him to perpetrate a crime in violation of the protections our statute affords minors by prohibiting contributing to their delinquency;[4] and would be so contrary to commonly accepted standards of decency and morality that any consensual agreement to engage in such conduct would be rejected by the law as against public policy and void. Wherefore, it is our conclusion that the court was justified in refusing defendant's request to instruct the jury that if the plaintiff consented she could not recover.

■ Though the foregoing sufficiently disposes of the defendant's contention on the problem of consent, there are further observations to be made which have a bearing on the matter. The purpose of instructions to the jury is to inform them as to the law applicable to the evidence and enable them to resolve the issues in dispute. To that end, what each party is entitled to is to have instructions given as to his evidence and his theory of the case.

■ Here, the question of the actual consent of the plaintiff does not appear to be of any critical importance to the theory of either party. No question was involved as to whether there was an overcoming by force, as contrasted to giving consent, nor anything analogous to it. The defendant's position and his testimony was to deny any of the acts of sexual abuse or mistreatment of the plaintiff. The plaintiff does not deny the actual giving of consent and participating in his nefarious activities, which she said she consented to because she was under parental domination and fear. In surveying the conflicting evidence and claims of the parties, it is difficult to see how the instructions unfairly dealt with defendant as to his contentions, nor that there is any reasonable likelihood that there may have been a different result.

■ The defendant also seeks to invoke parental immunity against a suit by his child. We see no merit in the contention, and deal with it summarily. That there was such immunity at common law is not to be denied.[5] However, defendant's own brief correctly states that "There is a clear majority trend toward limiting or abolishing the immunity which the common law conferred on parents as to actions brought by their children."[6] We think it is sufficient here to say that there is no foundation in our law, statutory or decisional, upon which to base parental immunity against a suit such as the instant one; and we don't think there should be. In addition, even if there were, such immunity would be an affirmative defense which must be pleaded,[7] which the defendant failed to do.

■ The final point we address is defendant's contention that the trial court erred in "not granting a new trial or reducing damages." He cannot claim error for not granting a new trial because no such motion was made to the trial court. The only

---

**2.** See Restatement (Second) of Torts § 496A, Comment b; *Nishi v. Hartwell*, 52 Haw. 188, 473 P.2d 116 (1970); *Charley v. Cameron*, 215 Kan. 750, 528 P.2d 1205 (1975).

**3.** See *Hough v. Iderhoff*, 69 Or. 568, 139 P. 931 (1914); *Priboth v. Haveron*, 41 Okl. 692, 139 P. 973 (1914); 6 Am.Jur.2d Assault and Battery, Section 156.

**4.** See 55–10–80, U.C.A.1953.

**5.** See 67A C.J.S. Parent and Child § 29.

**6.** Id.

**7.** That such a defense must be affirmatively pleaded, see U.R.C.P. 8(c); *Green v. James*, 473 F.2d 660 (9th Cir. 1973).

motion there filed attacking the judgment was "For an order reducing the judgment for punitive damages . . . in that said damages were excessive and given under the influence of passion and prejudice." Therefore, that is the only question as to damages which we consider on appeal.

Defendant argues that the award of $30,000 punitive damages is so grossly disproportionate to any damages actually suffered that the only reasonable conclusion to be drawn therefrom is that the jury was actuated by passion and prejudice. There are certain principles to be had in mind as applicable to that contention.

■ Punitive damages may be awarded where the nature of the wrong complained of and the injury inflicted goes beyond merely violating the rights of another in that it is found to be willful and malicious. They are allowed as a punishment to the offender, and as a warning to him, and to others, not to engage in similar vexatious actions.[8] When such facts are found to exist, the amount of such award is left to the sound judgment of the jury as related to the circumstances of the individual case. That prerogative is, of course, not wholly without limit. We recognize the soundness of defendant's contention that there is a restraint of reasonableness upon the amount of punitive damages that can properly be awarded; and that if, in considering the total circumstances, it appears that they must have been awarded from passion or prejudice rather than reason and justice, they should not be permitted to stand.[9]

■ We are not insensitive to defendant's urgence that $30,000 is a large award of punitive damages, in that it is about three times the $12,000 compensatory damage award. We do not mean to suggest that trebling of compensatory damages is

any guide to awarding punitive damages. Nevertheless, it is of interest to note that that ratio is not too far apart from the penalty provisions in some civil matters for certain violations of statutory prohibitions.[10]

To be considered in relation to the defendant's contention are the innate evils of his conduct as found by the jury, together with how extensive and far reaching its possible effects are upon the lives of plaintiff and others.[11]

■ Further to be taken into account is the proposition: that when the determination of the jury has been submitted to the scrutiny and judgment of the trial judge, his action thereon should be regarded as giving further solidity to the judgment.[12]

Upon our consideration of the total circumstances, and according the verdict and the judgment the presumptions of verity they are entitled to, we are not persuaded that we should disturb the amount assessed as damages, nor that the defendant has borne the burden which is his on appeal of showing that there was such error as to warrant upsetting the judgment.

Affirmed. Costs to plaintiff (respondent).

WE CONCUR:

MAUGHAN, WILKINS and STEWART, JJ., concur.

HALL, J., concurs in result.

---

**8.** *Evans v. Gaisford*, 122 Utah 156, 247 P.2d 431 (1952); *Holdaway v. Hall*, 29 Utah 2d 77, 505 P.2d 295 (1973).

**9.** *Wilson v. Oldroyd*, 1 Utah 2d 362, 267 P.2d 759 (1954).

**10.** See, e. g., violations of anti–trust laws, Sec. 76–10–918; for theft of lifestock, Sec. 4–24–27; receiving stolen property, Sec. 76 ·6–412; and for refusing to vacate after proper notice to quit premises, Sec. 78–36–10, U.C.A.1953.

**11.** *Holdaway v. Hall*, supra, note 7.

**12.** *Cardon v. Brenchley*, Utah, 575 P.2d 184 (1978) and authorities therein cited.