Cheshire
No. 2000-832

JUDITH KRAVITZ & a.

v.

BEECH HILL HOSPITAL, L.L.C. & a.

Argued: February 7, 2002
Opinion Issued: September 27, 2002

*McLane, Graf, Raulerson & Middleton, PA*, of Manchester (*Bruce W. Felmly* and *Jennifer L. Parent* on the brief, and *Mr. Felmly* orally), and *John Eisner*, of Gilford, on the brief, for the plaintiffs.

*Mallory and Friedman, PLLC*, of Concord (*Christine Friedman* on the brief and orally), for defendant Beech Hill Hospital, L.L.C.

DUGGAN, J. The plaintiffs, Judith Kravitz and her daughter, Jane Doe, appeal a ruling of the Superior Court (*Mangones*, J.) denying their motion for additur, or in the alternative, for a new trial on damages. The plaintiffs maintain that the trial court erred by allowing defendant Beech Hill Hospital, L.L.C. (Beech Hill) to impeach the jury's verdict by supplementing the record with evidence obtained during its post-trial conversations with the jurors and that the trial court was improperly influenced by this inadmissible evidence. The plaintiffs also argue that the trial court erred by admitting evidence of Doe's prior consensual sexual activity and by refusing to strike testimony that referred to the race of individuals with whom Doe allegedly had prior consensual sex. Beech Hill cross-appeals, arguing that the court erred in denying its motion to set aside the jury verdict, or in the alternative, for judgment notwithstanding the verdict. Beech Hill also argues that the court erred in permitting Kravitz to amend her writ after the verdict was reached by the jury. We affirm in part and reverse in part.

The plaintiffs sued Beech Hill and defendant Ernest Reels to recover damages resulting from the alleged sexual assault and rape by Reels of Doe, a fourteen-year-old girl, while she was a patient at Beech Hill. Beech Hill is a health care facility specializing in the residential care and treatment of adult and adolescent patients suffering from drug and alcohol

addiction. The plaintiffs alleged that Beech Hill failed to provide proper care and treatment of Doe while she was under its care and failed to prevent Reels, an eighteen-year-old patient known by Beech Hill to be a convicted sexual offender, from having access to Doe. The plaintiffs alleged that as a result of Beech Hill's failures, Doe was sexually assaulted and raped by Reels. The plaintiffs did not claim a violation of the felonious sexual assault statute. *See* RSA 632-A:3, II (2001) (victim between age of 13 and 16). During the trial, Doe testified that she was forcibly raped. Thus, the central question at trial was whether the sexual activity involved was consensual, *i.e.*, whether Doe voluntarily participated in the sexual conduct.

After a ten-day trial, the jury returned the completed verdict form finding Beech Hill liable. Because liability had already been established against Reels by default, the verdict form contained a pre-written "yes" answer concerning Reels' liability to the plaintiffs. The jury then apportioned fault between Beech Hill and Reels, finding Beech Hill one hundred percent at fault. The jury returned a verdict of $13,672.00 for Kravitz, which was apparently based on a bill submitted by Kravitz for reimbursement for Doe's hospitalization at Beech Hill. The jury found that Doe was not entitled to any damages. Because the jury found Beech Hill negligent, the trial court recommitted the question of Doe's damages (Question #6) to the jury. The jury then asked the following question:

> We answered yes to question 1 and 2 [finding that Beech Hill breached its duty to the plaintiffs thereby causing damages to the plaintiffs] because we felt that there were damages in the way of medical expenses incurred by Judith Kravitts [*sic*] [b]ut not necessarily damages to Jane Doe as caused by Beech Hill. That is the reason for filling in our form in this manner. The instructions stated that we could award Medical expenses to Ms. Kravitts [*sic*]. It did not state that a limitation was to be placed on Question #6. Please advise.

The court responded to the jury by explaining:

> Question #6 shows a response of '0' in damages as to Jane Doe. In light of your findings in Questions #1 and #2, you must make a determination as to a damage amount concerning Jane Doe herself. Therefore, please continue your deliberations as to Question #6. In considering question #6, you must follow all instructions on damages as previously given to you.

The jury shortly thereafter rendered a verdict for Doe for $130.00.

The plaintiffs moved for additur, or in the alternative, a new trial on damages. Beech Hill objected and further moved to set aside the verdict, or, alternatively, for judgment notwithstanding the verdict. Prior to the court ruling on the above motions, Beech Hill's counsel filed a supplement to its original objection explaining that she had contacted twelve jurors and learned that they unanimously believed that the sexual contact between Doe and Reels was consensual. The motion also explained that counsel learned that the jurors found Beech Hill liable, not because they believed that Doe was raped or that Beech Hill was negligent, but because that "was their way of giving Judith Kravitz the $13,762.00. They did that because they felt she did not get what she paid for in sending her daughter to Beech Hill Hospital." Counsel attached her own affidavit describing her post-trial conversations with the jurors. The plaintiffs objected to this supplemental filing on the grounds that Beech Hill's post-trial effort to impeach the jury's verdict was improper and that the court should not consider such evidence.

After reviewing the affidavit, the court determined that it was unnecessary to reconvene the jury. In its order on the post-trial motions, the court declined to grant an additur and reduced the $130.00 verdict as to Doe back to the jury's original verdict of zero. In support of this ruling, the court explained that the jury could have reasonably determined that damages on the part of Doe had not been established. The court further noted that the jury appeared to have provided Kravitz a restitutional or contractual remedy. Because such a remedy had not been pleaded, the court permitted Kravitz to amend her pleadings in order to address the issues of contractual or restitutional damages. This appeal and cross-appeal ensued.

## I. Post-Verdict Inquiry into Jury Intentions

■■ The plaintiffs first assert that the trial court improperly received the affidavit of counsel for Beech Hill to impeach the verdict. It is well established that the testimony or affidavits of jurors are not admissible to impeach the verdict. See Bunnell v. Lucas, 126 N.H. 663, 667-68 (1985). "This is so, not because they are irrelevant but because experience has shown that they are more likely to prevent than to promote the discovery of the truth." Exeter-Hampton Mobile Co. v. State, 106 N.H. 476, 478 (1965) (quotations and ellipses omitted). Although the testimony or affidavits of jurors are inadmissible when offered as a basis for setting the verdict aside, they may be admitted in limited circumstances to exculpate the jury or to sustain a verdict. See Bunnell, 126 N.H. at 668. Thus, it is permissible to use the affidavits of jurors to sustain a verdict *only* after it has been attacked by competent evidence of misconduct of one or more

members of the jury. *See Caldwell v. Yeatman*, 91 N.H. 150, 153 (1940); *see also* 8 J. WIGMORE, EVIDENCE § 2354(4), at 714-16 (McNaughton rev. 1961) (explaining that a juror's testimony may be offered to sustain a verdict when there have been allegations of bias or misconduct during jury deliberations). In contrast, where the object of admitting the jurors' testimony is to affect, either favorably or unfavorably, a motion to set aside a verdict or to grant a new trial, evidence regarding the jurors' motives, beliefs, misunderstandings, intentions and the like is immaterial and may not be considered. *See* WIGMORE, *supra* §§ 2349(a), at 681 & 2354(4), at 714-16; *see also* FED. R. EVID. 606(b) (prohibiting use of juror's testimony or affidavit to determine the validity of a verdict).

█ In this case, counsel for Beech Hill submitted an affidavit explaining that "[t]here is now overwhelming evidence that the jury found the sex was consensual." Counsel requested the court to "accept the affidavit of counsel as evidence in support of Beech Hill's opposition to plaintiffs' motion, call the jury back to poll them on this question, or allow me the time to collect the affidavits of the individual jurors consistent with what they told me." Because there were no allegations of juror bias or misconduct, it was patently inappropriate to submit the attorney's affidavit for the purpose of explaining the jurors' intentions and motives behind their verdict. The affidavit was thus inadmissible as an evidentiary basis for setting aside the jury verdict, and the trial court was permitted to consider it only "to determine whether the jury should be reconvened for questioning on the propriety of the conduct of their deliberations." *Drop Anchor Realty Trust v. Hartford Fire Ins. Co.*, 126 N.H. 674, 682-83 (1985). Because the affidavit contained no information that the jury engaged in misconduct, the trial court properly refused to reconvene the jury.

The plaintiffs assert, however, that the court did not merely use the affidavit as a basis for deciding whether to reconvene the jury, but also to resolve the post-trial motions on Doe's claims. After reviewing the court's order, we issued an order on May 8, 2002, asking the trial court to "clearly articulate whether it was influenced by Attorney Friedman's affidavit to any extent in ruling on the post-trial motions other than the motion to reconvene the jury." On May 29, 2002, the trial court responded that its "substantive determinations were made without consideration of the unilateral jury interview material presented by counsel for Beech Hill . . . [and that it] also believes that it made its determinations without influence of those materials." As the trial court explained that it did not rely on the affidavit and further noted the specific portions of the proceedings upon which it did rely, we conclude that the trial court did not impermissibly use

the affidavit in ruling on the parties' post-trial motions. *See Eichel v. Payeur*, 106 N.H. 484, 487 (1965) (explaining that a court's order is presumed to rest upon the grounds stated by a motion, and not upon impermissible information).

## II. Evidentiary Issues

The plaintiffs argue that the trial court erred by refusing to increase the jury verdict or grant a new trial on the issue of damages after the trial court's pretrial orders were violated on two occasions. In its pretrial orders, the trial court ruled that while evidence of Doe's alleged consensual sexual activity prior to her admission to Beech Hill was inadmissible, Beech Hill "shall have leave to inquire of witnesses, in good faith, into whether Jane Doe, or Judith Kravitz on behalf of Jane Doe, may have made false allegations of sexual assault against any third-party, or allegations of sexual assault which were later recanted." The court further ruled that Beech Hill was required to avoid references to the ethnicity of persons unless ethnicity was determined to be relevant. The plaintiffs argue that these pretrial orders were violated, first, when Beech Hill referred to an alleged sexual incident involving Doe as consensual, and second, when a defense witness unintentionally described the men involved in that incident as being Jamaican.

We first address whether it was error for the trial court to admit evidence of Doe's allegedly prior consensual sexual activity. While the plaintiffs maintain that the admission of this evidence was prejudicial error which severely affected the plaintiffs' damages claims, Beech Hill argues that it was plaintiffs' counsel who originally described the event as consensual. Beech Hill also contends that the use of the term "consensual" did not violate the pretrial order because it was offered to demonstrate that while Doe told one person that she was raped by three men, she told another person that the incident was consensual.

The testimony regarding the alleged rape by the three men was originally brought forward, without objection, during Beech Hill's cross-examination of Dr. Karen Wayment. Beech Hill questioned Dr. Wayment as to whether she was aware that Doe claimed that she had been raped by three men, but later recanted. Dr. Wayment responded that she was not aware that Doe had claimed that she was raped. On redirect-examination, the plaintiffs continued this line of questioning by asking Dr. Wayment whether she understood the contact with the three men to be rape. Dr. Wayment replied that the contact had *not* been reported as a rape. On recross-examination, Beech Hill asked the following questions:

Q. This business about the three men, Molly Connelly told you that it was not rape, didn't she?

A. She did not indicate it was rape.

Q. In fact, she told you it was consensual, didn't she?

A. Yes.

Q. No more questions.

After reviewing the above testimony, we conclude that these questions did not violate the pretrial order. The testimony was offered to prove that while Doe had informed Holly Nudd (Doe's caretaker) that she was raped by three men, she told Molly Connelly (Doe's therapist) that the sexual incident was consensual. Thus, Beech Hill used the word "consensual" to illustrate that Doe had provided inconsistent stories regarding her contact with the three men.

Moreover, even assuming this line of questioning did violate the pretrial order, the trial court has broad discretion to determine whether such a violation warrants setting aside the verdict and ordering a new trial. *See Hayes v. State*, 109 N.H. 353, 355-56 (1969). Here, testimony that the incident had not been reported as rape had already been adduced during the plaintiffs' redirect-examination of Dr. Wayment, and thus any prejudice caused by Beech Hill's subsequent use of the word "consensual" would be minimal. The trial court also explained in its jury instructions that evidence of Doe's prior consensual activity could not be considered in determining whether the sexual activity in this case was consensual. We therefore conclude that the trial court's exercise of discretion in refusing to increase the verdict or to order a new trial on damages was sustainable. *See id.* at 356; *see also State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard).

We next address the plaintiffs' arguments that the trial court erred by refusing to strike the entire testimony of a witness who inadvertently referred to the three men as "Jamaican" and that the curative instruction was inadequate to remedy the resulting prejudice. "The trial court is in the best position to gauge the prejudicial impact of particular testimony, and what steps, if any, are necessary to remedy that prejudice." *State v. VanDerHeyden*, 136 N.H. 277, 285 (1992) (quotations and brackets omitted). In this case, the court determined that it was unnecessary to strike the witness's entire testimony. It instead instructed the jury that "[t]he race or ethnicity of any person is not before you and is not material to any determinations that you have to make in this matter." There is no evidence that the trial court's exercise of discretion cannot be sustained, as

"[o]ur system of justice is premised upon the belief that jurors will follow the court's instructions." *State v. Smart,* 136 N.H. 639, 650 (quotations omitted), *cert denied,* 510 U.S. 917 (1993). Furthermore, the plaintiffs requested that the witness's entire testimony be stricken in order to make Beech Hill "pay the price" for their witness's mistake. As the witness's reference to the three men's race was inadvertent and Beech Hill had previously instructed the witness to refrain from mentioning their race, the trial court's refusal to strike the witness's entire testimony for the purpose of punishing Beech Hill is sustainable.

*III. Post-Trial Rulings*

The plaintiffs appeal the trial court's refusal to grant additur or, in the alternative, a new trial on damages. Beech Hill argues that the trial court should have set aside the jury verdict, or in the alternative, granted judgment notwithstanding the verdict. Beech Hill also argues that the trial court erred in permitting Kravitz to amend her writ after the jury reached its verdict.

With regard to Doe's damages, no party disputes that it is unreasonable for a jury to find that a fourteen-year-old child had been raped, but award her zero damages. The plaintiffs argue that because the special verdict form indicated that the jury found negligence and negligent causation on the part of Beech Hill, there has been a clear finding as to liability and the damages are grossly inadequate. Beech Hill argues that the jury did not find that Doe had been raped, but instead answered "yes" to the first two questions on the special verdict form in order to reimburse Kravitz for the money they believed she had paid to Beech Hill for her daughter's treatment.

Where there has been a finding as to liability and the damages are grossly inadequate, the appropriate remedy is to order additur, or, in the event the defendant does not consent to the additur, a new trial on damages. *See Belanger v. Teague,* 126 N.H. 110, 111 (1985); *Doody v. Railroad,* 77 N.H. 161, 164 (1914). In determining whether the trial court should order a new trial on damages, we have explained:

> Where the verdict is decidedly against the weight of the evidence, so that it is apparent that the jury must have misunderstood or totally disregarded the instructions of the court thereon, or must have neglected to consider the facts, and overlooked prominent and essential points in the evidence, where it is such a verdict that twelve honest and intelligent [jurors] would not have returned it, it is the duty of the court to set it aside.

*Panas v. Harakis & K-Mart Corp.*, 129 N.H. 591, 599 (1987) (quotations omitted).

The plaintiffs argue that the trial court erred because there was a "clear" finding as to liability and causation against Beech Hill. The trial court explained, however, that there was no clear finding of liability. It stated that "[a] review of the verdict form and the jury's question would indicate that the jury had not found that non-consensual sexual conduct had occurred and that the jury intended to grant no damages to Jane Doe." We agree.

■ In any negligence action, the plaintiff must prove a breach of a duty of care by the defendant, which proximately caused the plaintiff's injury. *See Weldy v. Town of Kingston*, 128 N.H. 325, 330 (1986). As damages are an essential element to any negligence claim, a verdict for the plaintiff cannot result without them. *See* 8 R. McNAMARA, NEW HAMPSHIRE PRACTICE, PERSONAL INJURY TORT AND INSURANCE PRACTICE § 94, at 100 (1996). In this case, there is no clear finding that Doe suffered damages as a result of a breach by Beech Hill. While the jury originally answered "yes" to the question regarding whether Beech Hill's breach of its duty caused damages to the plaintiff*s* (plural), the jury awarded no damages to Doe. The jury subsequently informed the court in its jury question that it did *not* find that Doe suffered damages. It explained that "we felt that there were damages in the way of medical expenses incurred by Judith Kravitts [*sic*] [b]ut not necessarily damages to Jane Doe as caused by Beech Hill." Thus, although the jury found that Beech Hill was one hundred percent at fault for the plaintiffs' damages, the jury only intended to award medical expenses to Kravitz and did not intend to find damages for Doe.

We also agree with the trial court's determination that the jury's verdict indicates that the jury did not find that the alleged sexual assault occurred. While liability had already been established against Reels by default, in apportioning legal fault between Beech Hill and Reels, the jury found that Reels was not legally at fault for *any* of the plaintiffs' damages. If the jury found that Doe had not assented to the sexual contact, it probably would have apportioned at least a portion of legal fault to Reels. Considering the above, the trial court did not err in concluding that the jury determined that the sexual activity had been "volitional on the part of both parties."

We next address Beech Hill's argument that the trial court erred in admitting Beech Hill's own medical bills for the time following the alleged rape as evidence of damages. Beech Hill argues that because the plaintiffs failed to produce evidence that there was a causal connection between the alleged rape and the Beech Hill bill, the bill was irrelevant. Because

Kravitz's verdict was based solely on this purportedly inadmissible evidence, Beech Hill argues that the verdict should have been set aside.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.H. R. Ev. 401. The determination of whether evidence is relevant is within the sound discretion of the trial court, and we will not reverse its determination absent an unsustainable exercise of that discretion. *See Marcotte v. Timberlane/Hampstead School Dist.*, 143 N.H. 331, 346 (1999); *see also Lambert*, 147 N.H. at 296 (explaining unsustainable exercise of discretion standard).

During the trial, the plaintiffs presented evidence that Doe was exhibiting signs of emotional trauma from the alleged rape, thus requiring further care during her stay at Beech Hill. Although Beech Hill presented contrary evidence, that is, that Doe would have been required to continue her stay at Beech Hill regardless of the alleged rape, the jury could have reasonably accepted the plaintiffs' argument that the medical bills were necessitated by the emotional trauma of the rape. As sufficient evidence was presented to create a causal connection between Doe's alleged rape and her extended stay at Beech Hill, we conclude that the trial court did not err in allowing the medical bills to be submitted to the jury and in denying Beech Hill's request to set aside the verdict.

We last address whether the trial court erred in allowing the plaintiffs to amend their pleadings after the verdict. In its order, the trial court explained that "the jury appears to have provided Mrs. Kravitz with a restitutional or contractual remedy. That remedy was not pleaded. Under our liberal policy of amendment of pleadings, a party may seek to amend even after the verdict in order to conform with the proofs." Beech Hill contends that this retroactive amendment was unfair and prejudicial, as it had no notice of the plaintiffs' claim and had it been provided notice, it would have presented evidence at trial to defeat such a claim.

We agree that it was error for the trial court to allow the plaintiffs to amend their pleadings. RSA 514:9 (1997) permits substantive amendments to pleadings when they are necessary to prevent injustice. Accordingly, the general rule in New Hampshire is to allow liberal amendment of pleadings, and we have held that a party may seek to amend even after a jury's verdict has been entered. *See Sleeper v. Company*, 100 N.H. 158, 160 (1956). Nonetheless, "[i]t is well settled that a defendant is entitled to be informed of the theory on which the plaintiffs are proceeding and the redress that they claim as a result of the defendant's actions." *Pike Industries v. Hiltz Construction*, 143 N.H. 1, 3 (1998) (quotations omitted).

We, therefore, allow liberal amendment of pleadings so long as the changes do not surprise the opposite party, introduce an entirely new cause of action, or call for substantially different evidence. *See Clinical Lab Prod's Inc. v. Martina*, 121 N.H. 989, 991 (1981).

In this case, the proposed amendment introduced an entirely new cause of action. The plaintiffs never pleaded breach of contract or restitutional damages. Nor could this claim be inferred from the pleadings and it was not otherwise referred to by either party during the trial. While the jury provided an award for such damages, Beech Hill was not prepared to defend such a claim and presented no evidence on the subject. We conclude, therefore, that the verdict in favor of Kravitz must be set aside.

*Affirmed in part; reversed in part.*

NADEAU, J., with whom BRODERICK, J., joined, concurred specially; BROCK, C.J., and DALIANIS, J., concurred.

NADEAU, J., concurring specially. I concur in the court's opinion. I write separately, however, to note that this case did not present us with the question, nor does the court's opinion in this case decide, whether the criminal statute RSA 632-A:3, II (Supp. 2002) would bar the defense of consent in a civil action for rape where the victim was under sixteen years of age at the time of the alleged offense. This court has noted, citing a prior version of RSA 632-A:3, that the statute "fixed the age at which a minor person may consent to sexual intercourse." *Goodrow v. Perrin*, 119 N.H. 483, 486 (1979). Courts in other jurisdictions have held similar statutes applicable to both criminal and civil cases. *See, e.g., Doe ex rel. Roe v. School Dist. No. 2*, 518 S.E.2d 259, 262 (S.C. 1999). Because that issue is not before the court, I express no opinion on it, but specially concur simply to point out that it remains an open issue in this State.

BRODERICK, J., joins in the special concurrence.