843 A.2d 890

Tanika TATE

v.

The BOARD OF EDUCATION OF PRINCE
GEORGE'S COUNTY.

No. 0036, Sept. Term, 2003.

Court of Special Appeals of Maryland.

March 5, 2004.

Jon D. Pels (Pels, Anderson & Lee, LLC on the brief), Bethesda, for appellant.

Roger C. Thomas (Terry L. Bell, Knight, Manzi, Nussbaum & LaPlaca, P.A. on the brief), Upper Marlboro, for appellee.

**538**

Argued before DAVIS, GREENE *, SHARER, JJ.

SHARER, Judge.

The question presented in this appeal, one of first impression, is whether the voluntariness component of the defense of assumption of the risk in a civil action is negated as a matter of law because the victim's consent is not a defense to the criminal offense of statutory rape.[1]

Appellant, Tanika Tate, seeks review of a motion for judgment entered against her in the Circuit Court for Prince George's County. Appellant sued the Board of Education of Prince George's County after she was sexually assaulted by a family member with whom she left her high school, before the usual dismissal time, without permission.

Appellant has presented for our review three questions, which we have re-cast as one for simplicity:[2]

---

* Greene, J., now a member of the Court of Appeals, participated in the conference and decision of this case while a member of this Court; and participated in the adoption of this opinion as a member of this Court by special designation.

1. The crime formerly known as statutory rape is now codified as Md.Code, Ann., Crim. L. § 3–307(a)(5), which proscribes vaginal intercourse if the victim is 14 or 15 years old and the person performing the act is at least 21 years old. At the time of the events giving rise to this litigation, appellant was 15 years old; her partner was over 21 years old.

2. Appellant's questions presented, as posed in her brief, ask:
   1. Does a school's negligence in permitting a minor child student to leave school grounds in violation of school policy act as the superceding and proximate cause of the injuries later sustained to the minor child when the injuries sustained were foreseeable by the school?
   2. Is it possible for a fifteen-year old female to assume the risk of statutory rape when one of the elements of the defense is voluntariness on the part of the minor and the minor testifies that she was enamored, scared and did what the predator told her to do and when the law clearly states that consent/voluntariness cannot exist on the part of a minor who is statutorily raped?
   3. Did the Circuit Court Judge err in not submitting the issues of negligence on the part of the School Board and assumption of the risk on the part of Tanika Tate to the jury?

   Because the court granted appellee's motion for judgment on the grounds that appellant assumed the risk of her injuries, and appellant

*Did the circuit court err by granting appellee's motion for judgment on the basis that appellant assumed the risk of her injuries as a matter of law?*

Although a victim's age at the time of the sexual assault prevented her attacker from asserting consent as a defense to criminal charges, we hold that the victim was competent to consent for civil litigation purposes, and thus could be determined to have assumed the risk of her injuries. We shall affirm the judgment of the trial court.

## FACTS and PROCEDURAL HISTORY

■ We note that "[b]ecause we are reviewing the trial court's decision to grant the appellees' motion for judgment at the close of the appellant's case, we shall recite the facts as adduced at trial in the light most favorable to the appellant." *Nelson v. Carroll*, 355 Md. 593, 600, 735 A.2d 1096 (1999) (citing Md. Rule 2–519(b)); *Blood v. Hamami P'ship*, 143 Md.App. 375, 379, 795 A.2d 135 (2002).

In November 1999, appellant was fifteen years of age and a 10th grade student at Suitland High School, a public high school under the management and direction of appellee, the Prince George's County Board of Education. During the Thanksgiving school holiday, her uncle-in-law, Kevin Shields, made sexual advances toward Tanika, including lifting her shirt and skirt. On the Monday after the holiday, Shields telephoned Tanika before she left home for school and informed her that "he was going to get me from school.... [S]o he could take me to his house and have sex with me."

On that same day, after her lunch period, Tanika was called from her math class to the high school's main office. When she arrived in the office, she was informed by a member of the office staff that Shields "was there to get a key from me." Shields apparently had sought permission to take Tanika from her class, which was denied by Kisha Garner, a secretary

---

appeals only that ruling, we shall consider appellant's challenges only as they relate to that issue.

working in the main office. Ms. Garner testified that she informed Shields she would not allow Tanika to leave school property with him without parental permission, but that she would call her from class so that she could give him the key.[3]

After Tanika and Shields exchanged keys, Ms. Garner testified, they left the main office and she followed them to the main lobby. She watched Tanika and Shields until Tanika left the lobby and walked in the direction of her classroom, and Shields left the building. Ms. Garner and Tanika both testified that neither Tanika nor Shields informed anyone of their intentions to leave the school building together. It is unclear from the record whether Tanika and Shields left the building by the same exit, or by separate exits. The record does reveal that there was a guard booth located at the main entrance to the school, but that it was not manned at the time.

Tanika testified that after she left the school grounds with Shields, they traveled together to his home in Upper Marlboro. While at his home, Shields directed Tanika to remove her clothes. Upon her refusal, Shields removed them. She testified that Shields then engaged in several sexual acts with her, including intercourse, despite her protests. After the events at Shields' house, he returned Tanika to school just ten minutes before dismissal time.

Three months after the incident, Tanika told family members about what had occurred. As a result, Shields was charged with three sexual offenses stemming from the incident. He was convicted and sentenced to two years in prison.[4]

### The Board of Education's Dismissal Policy

It was Tanika's theory at trial that agents and employees of the Board were negligent in permitting her to be taken from school by Shields, contrary to established Board policy. Thus,

---

3. Appellant did not testify to these events, only that "[Shields] told me that let's go, and we left out the door."

4. Shields was convicted of third degree sexual offense, fourth degree sexual offense, and sexual child abuse in the Circuit Court for Prince George's County.

the emphasis at trial concerned the school's early dismissal policy and the procedures relating to the release of students to family members before the school day ends. Tanika acknowledged that students were expected to remain at school for the entire day, unless they had permission from the school staff or their parents to leave early. She also knew that if a student needed to leave early, a parent or other authorized adult was required to sign the student out. In fact, Tanika's mother had taken her from school early on several occasions before the Monday after Thanksgiving in 1999. Tanika knew that leaving school as she did was without permission, and contrary to regulations.

## The Present Case

On December 18, 2001, Tanika's mother, Darlene Gray, filed a two-count complaint on her own, and her minor daughter's, behalf, alleging negligence by the Board of Education. When Tanika reached the age of majority, she filed an amended complaint to bring her claims in her own right. In May 2002, the Board of Education filed a third-party complaint against Shields for indemnification and contribution. Shields did not answer, and a default judgment was entered against him on August 16, 2002.

On March 4 and 5, 2003, a jury trial was held in the Circuit Court for Prince George's County. At the close of appellant's case, the court dismissed Darlene Gray's claim. At the conclusion of all the evidence, the court granted the Board's motion for judgment as to the remaining count. In so doing, the court ruled:

All right. The case that neither side cited to me, but the court found on its own, I find to be particularly controlling here, the case *Casper v. Charles F. Smith and Sons Company*, which is at 71 Md. [App.] at 445[526 A.2d 87] Court of Special Appeals opinion from 1987. It arose from an incident in which a 7– and an 8–year old girls were severely and permanently injured when they fell into a stream located in Baltimore City and were submerged in icy water. As a

result, both children were profoundly brain-damaged and suffered from, among other things, spastic quadriplegic.

And in that case, the court deals with a number of issues, but one is the assumption of the risk. They cite Zachs v. Pleasant for the proposition. I[']ll quote it, that assumption of the risk implies an intentional exposure to a known danger, and they do go through, to some extent, the distinction between contributory negligence and assumption of the risk; that while may overlap often and may certainly result in the same result, they are not the same.

And assumption of the risk, obviously, is where the risk of danger was known and understood by the plaintiff, and the plaintiff consented, voluntarily chose to encounter the risk. In this case, in Casper, they found where the plaintiff voluntarily enters into a situation involving obvious danger, he or she may be found to have assumed the risk. There is no doubt of tender years can assume the risk of his or her actions. In determining whether or not a plaintiff had knowledge and appreciation of the risk, an objective standard must be applied, and a plaintiff will not be heard to say that he did not comprehend the risk which must have been obvious to me.

\* \* \*

In this case, the facts do permit only one conclusion. The facts as stated by the plaintiff herself were that several days before the incident, she had been the subject of sexual advances, verbal advances, and compliments I guess about how pretty she was and the like, accompanied by some form of sexual assault, exposing her body by lifting up her clothing. That was followed within days on the day of the incident by a phone call from her uncle, where he directed [sic] stated that he was going to come to the school and pick her up and take her to his house, where they would have sex. So, there can be but one conclusion, that the plaintiff knew of the risk that was involved. I don[']t find the distinction either in the law or in the facts here. The

plaintiff is arguing between consensual sex and nonconsensual sex.

The question then, the only question left is whether she voluntarily exposed herself to that risk of harm. And there are some cases that do say there may not be assumption of the risk where there is no alternative available. Usually, they[']re questions of pathways, and people walking, and the like, and they had to be somewhere, and there was only one available pathway.

Certainly in this case, the evidence would suggest that there were a number of alternatives available to the plaintiff. She testified that she had been told by her mother that she could come and should come to her when anybody did anything that made her uncomfortable, particularly in the area of sexual advances. Going to her mother would have been an alternative.

Any number of other alternatives existed at the school. When she came into contact with Mr. Shields in the office, she could have handed over the key which was the purported reason for the visit, and left. She could have said, I[']m not going to leave the office and simply stayed. She could have asked, excused herself to use the restroom. She could have done any number of things. Or she could have expressly told somebody, I[']m going with him; he has told me he wants to take me to his house for sex. She did not avail herself of any of those alternatives. And thus, I can[']t find that it was involuntary.

As regards the criminal statute, the criminal statute certainly says that, as a matter of criminal law, consent by someone of this age can never [be] validly given. And it may be that that policy that[']s invited there may prevent the claim of assumption of the risk to be raised by the abuser, had this been a case against Mr. Shields. We[']ve already reviewed cases early on in connection with your motion in limine about defense of contributory negligence and how the abuser may not raise that. And it may be that the Maryland law would not allow that with regard to the assumption of the risk. But I don[']t think that[']s the case

with regard to a claim against a third party, which is what we have here today.

This timely appeal followed.

## STANDARD of REVIEW

Maryland Rule 2–519, governing motions for judgment, provides:

(a) **Generally.** A party may move for judgment on any or all of the issues in any action at the close of the evidence offered by an opposing party, and in a jury trial at the close of all the evidence. The moving party shall state with particularity all reasons why the motion should be granted. No objection to the motion for judgment shall be necessary. A party does not waive the right to make the motion by introducing evidence during the presentation of an opposing party's case.

(b) **Disposition.** When a defendant moves for judgment at the close of the evidence offered by the plaintiff in an action tried by the court, the court may proceed, as the trier of fact, to determine the facts and to render judgment against the plaintiff or may decline to render judgment until the close of all the evidence. When a motion for judgment is made under any other circumstances, the court shall consider all evidence and inferences in the light most favorable to the party against whom the motion is made.

Md. Rule 2–519(a),(b) (2003).

Recently, this Court reiterated the standard of review of a motion for judgment:

We review the grant of a motion for judgment under the same standard as we review grants of motions for judgment notwithstanding the verdict. *Johnson & Higgins of Pa., Inc. v. Hale Shipping Corp.,* 121 Md.App. 426, 450, 710 A.2d 318 (1998) (citation omitted). We assume the truth of all credible evidence on the issue, and all fairly deducible inferences therefrom, in the light most favorable to the party against whom the motion is made. *Nissan Motor Co. Ltd. v. Nave,* 129 Md.App. 90, 116–17, 740 A.2d 102 (1999)

(citations omitted), *cert. denied,* 357 Md. 482, 745 A.2d 437 (2000). Consequently, if there is any evidence, no matter how slight, that is legally sufficient to generate a jury question, the case must be submitted to the jury for its consideration. *Washington Metro. Area Transit Auth. v. Reading,* 109 Md.App. 89, 99, 674 A.2d 44 (1996) (citation omitted).

*Orwick v. Moldawer,* 150 Md.App. 528, 531–32, 822 A.2d 506 (2003). This Court earlier stated:

> We stated the proper analysis a trial court should undertake in ruling on motions for judgment in *James v. General Motors Corp.,* 74 Md.App. 479, 484–85, 538 A.2d 782, *cert. denied,* 313 Md. 7, 542 A.2d 844 (1988):
>
>> [W]hen ruling on a motion for a judgment the trial judge must consider the evidence, including the inferences reasonably and logically drawn therefrom, *in the light most favorable to the party against whom the motion is made.* If there is any evidence, no matter how slight, legally sufficient to generate a jury question, the motion must be denied. . . . An appellate court reviewing the propriety of the grant or denial of a motion for judgment by a trial judge must conduct the same analysis. [Emphasis added; citations omitted.]
>
> Thus, if there are any disputed issues of fact, Maryland Rule 2–519 precludes the trial court from resolving them, unless there is no jury. *See Garrison v. Shoppers Food Warehouse,* 82 Md.App. 351, 354, 571 A.2d 878 (1990).

*Azar v. Adams,* 117 Md.App. 426, 435, 700 A.2d 821 (1997).

## DISCUSSION

*Did the circuit court err by granting appellee's motion for judgment on the basis that appellant assumed the risk of her injuries?*

At the outset of our discussion it is important to note that the Board's motion for judgment was granted based on the trial court's ruling that Tanika had assumed the risk of her

injuries, as a matter of law, by leaving school with Shields, knowing of his intentions.

██ Assumption of the risk is an affirmative defense with the burden of proof on the defendant. *See* GILBERT & GILBERT, MARYLAND TORT LAW HANDBOOK, 3rd Ed. § 11.6, p. 124. (2000). Therefore, the defense can be raised when a plaintiff has made out a *prima facie* case of negligence. *See, e.g., Smith v. Hercules Co.*, 204 Md. 379, 385, 104 A.2d 590 (1954). Here, no finding of *prima facie* negligence was made by the trial court, which merely entertained the Board's motion on the assumption of risk theory. Therefore, we will presume, *arguendo,* the negligence of the Board in our discussion of the correctness of the entry of judgment in favor of the Board.

In so doing, we have concluded that, even though not clearly articulated by the trial court, there was an implicit finding by the court as to the Board's negligence. A fair reading of the colloquy between the court and counsel that preceded the ruling on the motion for judgment supports a conclusion that the court, for the sake of the assumption of the risk argument, presumed negligence.[5]

██ Appellant's claim of negligence is based upon her assertion that the Board's employees allowed her to leave school property with Shields and, in so doing, violated well-established Board and school policy. Without conceding negligence, the Board countered that she assumed the risk of her injuries. Assumption of the risk is a complete bar to tort recovery in Maryland. *ADM Partnership v. Martin*, 348 Md.

---

5. Although appellant briefed, and *argued,* her theory of the Board's negligence, that issue is not before us. We observe, however, that the extant record would not support a finding of *prima facie* negligence. The evidence is clear that the Board's employees denied permission for Tanika to leave the school; that Ms. Garner observed Tanika returning in the direction of her assigned classroom; and that she left the school under pretext and by the practice of subterfuge. We observe further that the foreseeability component of a negligence claims is, on these facts, remote.

84, 91, 702 A.2d 730 (1997). Defining assumption of the risk, the Court of Appeals stated:

This Court has defined assumption of the risk as "an intentional and voluntary exposure to a known danger and, therefore, consent on the part of the plaintiff to relieve the defendant of an obligation of conduct toward him and to take his chances from harm from a particular risk." *Rogers v. Frush,* 257 Md. 233, 243, 262 A.2d 549, 554 (1970). It is well settled in Maryland that in order to establish the defense of assumption of risk, the defendant must prove that the plaintiff: "(1) had knowledge of the risk of the danger; (2) appreciated that risk; and (3) voluntarily confronted the risk of danger." *ADM Partnership v. Martin,* 348 Md. 84, 91, 702 A.2d 730, 734 (1997).

*Baltimore Gas & Elec. Co. v. Flippo,* 348 Md. 680, 705–06, 705 A.2d 1144 (1998).

Appellant now argues that, because an essential element of assumption of the risk is consent and volition, the defense is not available on the facts of this case. That is so, she posits, because the act committed by Shields was a statutory, strict liability crime to which consent of the victim is not available as a defense to the criminal prosecution. Tanika would have us transport the unavailability of consent as a defense to criminal charges to the civil court—that is, if consent is not a defense to the crime, there can be no consent or volition in terms of assumption of the risk as a defense to a tort action.

■ We shall first clarify what may, in the litigating of this appeal, be a misapprehension about consent. As we have noted, consent of the victim of a sexual offense based upon the age of the victim is not available to a defendant in the criminal realm. *See, e.g., Walker v. State,* 363 Md. 253, 262–63, 768 A.2d 631 (2001). It is not that an underage victim cannot consent to the sexual conduct. The crime is not predicated upon the victim's unwillingness to participate, but rather upon the societal notion that a child of tender years has not yet been able to form the necessary sophistication to fully comprehend the potentially adverse effects of sexual activity. We

have found no authority for the proposition that the legal impediment to the defense of consent in the criminal court is equally applicable in the civil court.[6]

■ We shall next put to rest any notion that the defense of assumption of the risk is not available to a defendant who is sued in tort by a minor plaintiff. The law is clear in Maryland that a minor may, under certain circumstances, assume the risk of his or her injuries, completely barring recovery. *See, e.g., McQuiggan v. Boy Scouts of Am.,* 73 Md.App. 705, 711, 536 A.2d 137 (1988) ("Even though Nicholas was only twelve years of age at the time of the incident, there is no doubt that a child of that age can assume the risk of his or her actions."). *See also Casper v. Chas. F. Smith & Son, Inc.,* 71 Md.App. 445, 473, 526 A.2d 87 (1987), *aff'd,* 316 Md. 573, 560 A.2d 1130 (1989)(child plaintiffs, aged eight and seven, able to understand and appreciate the risk of going into an ice-covered stream to rescue their dog). This Court noted, however, that the injury must not be "an 'unusual' danger or one that a child of [a given] age could not comprehend, understand or appreciate." *McQuiggan, supra,* 73 Md.App. at 711, 536 A.2d 137.

■ With respect to assumption of the risk by a minor in a sexual assault case, this Court has said:

As we see it, for [the victim] to be barred from recovery, as a matter of law, the evidence must clearly demonstrate that she knew or should have known that by entering the boys' locker room she subjected herself to danger or injury. . . .

*Campbell v. Montgomery County Board of Education,* 73 Md.App. 54, 65, 533 A.2d 9 (1987), *cert. denied,* 311 Md. 719, 537 A.2d 273 (1988). Although *Campbell* is factually inapposite, it presents a framework for our analysis. The decision indicates that, under some circumstances, an individual (even a minor) may assume the risk of a sexual assault if the victim would reasonably have known what lay before her. The court

---

**6.** The General Assembly has enacted no exceptions to the common law tort rule of assumption of the risk.

must look to the moment when the victim was first in danger to determine if she assumed the risk of her injuries; and, that moment may occur well in advance of the victim's actual injuries. *See Crews v. Hollenbach*, 358 Md. 627, 655, 751 A.2d 481 (2000) (gas line repair team foreman assumed risk of explosion and fire associated with natural gas leak when he accepted position, twenty years prior to injury); *McQuiggan, supra*, 73 Md.App. at 710–11, 536 A.2d 137 (child assumed the risk of injury when he began playing dangerous game, even though he quit playing game before injury occurred); *Campbell, supra*, 73 Md.App. at 65, 533 A.2d 9 (if assumption of the risk occurred, girl did so when she entered boys' locker room at school without permission, even though the locker room was unoccupied at the time).

In the instant case, Shields made sexual advances toward Tanika several days before the sexual acts occurred. He telephoned her in the morning of the day of the incident, telling her that he intended to take her from school for the purpose of a sexual encounter. On Monday, Tanika then became a participant in the ruse about the exchange of keys being the purpose of Shields' visit to the school. She further deceived school staff about her intentions by appearing to return to class, as Shields appeared to leave school property when, in fact, she left the school to be with him. On the facts of record, it is beyond dispute that Tanika knew and understood that Shields intended to have sex with her if she left school with him. She was a willing participant in his escapade.

She argues, however, that the rules relating to a minor's assumption of the risk are inapplicable under these facts because she could not consent to statutory rape, and, thus could not provide the consent or voluntary action necessary for appellee to prove assumption of the risk. She argues that it is irrelevant whether she actually consented to the sexual act because, at the time, she lacked the capacity to do so.

While we note that Tanika steadfastly maintained that she did not consent to the sexual acts perpetrated by Shields, it is

not those acts for which the Board is alleged to have been responsible. The allegations of negligence as to the Board relate to Tanika having been placed in Shields' care, contrary to regulation, thereby putting her in danger. Clearly, as we have pointed out, she consented to being in his company, knowing his intentions, even if she ultimately said "no" to the sexual activity. Not even by extension could the Board have been liable for the ultimate assault upon her.

Appellant urges us to rely on an opinion from the Supreme Court of Utah, *Elkington v. Foust*, 618 P.2d 37 (Utah 1980). In *Elkington*, a jury awarded damages to a young woman for emotional injuries suffered as a result of continued sexual assault during a period of seven years by the defendant, her step-father, who became her adoptive father. The court ruled that "because the plaintiff was a minor[, she was] incapable of giving consent to acts of this nature[.]" *Id.* at 40. The court further noted that her consent,

> ... would be an agreement for him to perpetrate a crime in violation of the protections our statute affords minors by prohibiting contributing to their delinquency; and would be so contrary to commonly accepted standards of decency and morality that any consensual agreement to engage in such conduct would be rejected by the law as against public policy and void. Wherefore, it is our conclusion that the court was justified in refusing defendant's request to instruct the jury that if the plaintiff consented she could not recover.
>
> (footnote omitted).

*Id.*[7] Despite appellant's arguments to the contrary, we find *Elkington* to be factually inapposite and thus distinguishable. We do not see it as precedent for the proposition advanced by appellant.

---

7. The issue of consent in *Elkington* arose in context of the trial court's ruling on a requested instruction. The defendant requested that the court instruct the jury that the victim's consent was a bar to recovery. That request was denied and the court instructed the opposite—that consent, if any, was not consent or justification to the defendant's conduct.

In *Elkington,* the abuse was on-going and began when the victim was nine years old. The defendant was the abuser, not a third party who was alleged to have been a negligent contributor to her injuries. Further, the *Elkington* victim was under the dominion of her abuser and consented to the continued abuse only because " '[she] was scared, and [she] didn't want to hurt [her] mother.... He told [her], it would hurt [her] mother and [they] would be split up.' " *Id.* at 39. Also significant in *Elkington* was the age of the victim, who was much younger than was Tanika. None of the *Elkington* circumstances are present in the instant case. Appellant was not subjected to on-going abuse over a period of years from a very young age. Additionally, Shields did not threaten her until *after* the act. Finally, and perhaps most importantly, the defendant in *Elkington* was the victim's physical attacker, not a third-party upon whom an *in loco parentis* duty had been imposed.

We have been unable to find consideration of the specific facts presented by this case by a court of record. However, Dan B. Dobbs reports,

> Statutes traditionally criminalized sexual relations with minors under a stated age, in effect depriving those minors of the power to consent. Courts carried these criminal statutes over into tort law, holding that the seducer of an under-age minor would be liable in tort, since the consent would be ineffective. It is said that these statutes are only sporadically enforced and certainly they have not been the basis for major tort litigation for a long time. A mature minor's right to consent to abortion might seem to imply a right to consent to sexual activity as well. Some writers have argued that even explicit professions of consent by minors are in reality coerced. However, a Tennessee court has now held that a 16–year–old male presumptively has capacity to consent to a homosexual act with an older man so that a civil suit against the man would be barred, although a criminal prosecution would still be permissible.

Dan B. Dobbs, THE LAW OF TORTS § 98 at 224 (2001 & 2003 Supp.) (footnotes omitted).

This assessment is supported by case law from other states. The California courts, for instance, have ruled that:

> Furthermore, in addressing whether this particular criminal conduct should carry civil liability under the statute, it is important to remember civil and criminal law involve different considerations and distinctions. For example, the criminal law does not recognize consent by a person under the age of 18 as a defense. The different treatment civilly of the concept of consent is striking. There is no hard-and-fast rule as to the age at which a person attains the capacity to consent to bodily invasions. "A minor acquires capacity to consent to different kinds of invasions and conduct at different stages in his development. Capacity exists when the minor has the ability of the average person to understand and weigh the risks and benefits." ... Moreover, decisional and statutory law is replete with examples of situations in which a child over the age of 14 is deemed to have the mental capacity of an adult. In California, minors of that age are capable of obtaining an abortion or birth control devices ..., consenting to certain types of medical and mental health treatment ... and being emancipated.... Similarly, here, where we are addressing civil liability, we deem consent of an individual under the age of 18 a permissible consideration.

*Cynthia M. v. Rodney E.*, 279 Cal.Rptr. 94, 97, 228 Cal.App.3d 1040, 1046, (Cal.Ct.App.1991).

The Court of Appeals of Georgia agreed that "[a] charge on the inability of a child under 14 years of age to consent to sexual intercourse may be relevant in cases involving a child's ability to consent to criminal acts ... but it is not relevant in cases involving a 13–year–old child's ability to appreciate dangers of his environment and to avoid consequences associated with exposure to such dangers." *Robinson v. Roberts,* 423 S.E.2d 17, 18, 205 Ga.App. 645, 646 (Ga.Ct.App.1992).

Seventy-two years ago, the Supreme Court of North Dakota determined:

It must be remembered that both at common law and under our statutes an infant is liable for his torts in like manner as any other person . . ., and the fact of voluntary participation in any joint wrongful act would preclude an infant female participant from recovery on common law principles were it not for some statute declaring her to be legally innocent. The rape statute alone would be sufficient for this purpose under the authorities above cited, but when another statute characterizes her act as a voluntary violation of law it is legally impossible to [no] longer regard her as innocent for the purpose of a civil suit.

*Braun v. Heidrich,* 241 N.W. 599, 601, 62 N.D. 85, 90–91 (N.D.1932). *See also McNamee v. A.J.W.,* 519 S.E.2d 298, 302–03, 238 Ga.App. 534, 538–39 (Ga.Ct.App.1999) (collecting cases); *Altena v. United Fire & Casualty Co.,* 422 N.W.2d 485 (Iowa 1988).

Whether the inability to consent under criminal law renders voluntary actions non-consensual under civil law is far from clear, however. As the District Court for the Northern District of Alabama recently noted:

> The court is aware that under state criminal law, the plaintiff could not consent to have sexual relations due to her age. The court finds other districts have taken unreconcilable positions on the question of whether the inability to consent under criminal law renders voluntary actions non-consensual.

*Benefield v. The Bd. of Trs. of The Univ. of Ala. at Birmingham,* 214 F.Supp.2d 1212, 1217 n. 12 (N.D.Ala.2002) (citations omitted). *See, e.g., Kravitz v. Beech Hill Hosp., LLC,* 808 A.2d 34, 44, 148 N.H. 383, 393 (N.H.2002) (Nadeau, J., concurring). In a concurrence, the appellate division of the Supreme Court of New York recently questioned the law in that state in this regard. *Colon v. Jarvis,* 742 N.Y.S.2d 304, 292 A.D.2d 559 (N.Y.App.Div.2002) (Miller, J.P., concurring).

South Carolina, for instance, has determined that a minor is incapable of voluntarily consenting to a sexual battery committed by an older person, whether the matter occurs in the civil

or criminal context, but that actual consent may be relevant in a civil suit in determining damages only. *Doe v. Orangeburg County Sch. Dist. No. 2,* 518 S.E.2d 259, 260, 335 S.C. 556, 558–59 (S.C.1999). The court's determination was based, however, on a constitutional provision that prohibits an unmarried female under the age of fourteen from consenting to sexual contact. *Id.* at n. 3. The court permitted the question of the victim's consent to be considered for damage purposes. *See also AllState Ins. Co. v. Granger,* No. 236753, 2003 WL 22092716, at *2, 2003 Mich.App. LEXIS 2192, at *7–*8 (Mich. Ct.App. Sept. 9, 2003)("Our Legislature, by criminalizing sexual relations with minors, determined that harm results to underage persons who engage in sexual intercourse whether they consent to the act or not.").

Maryland does not have a constitutional provision similar to those cited by the South Carolina courts. In Maryland, a minor may consent to certain life-saving medical procedures, receive information about, and "treatment" for, pregnancy, venereal disease, and most birth control methods. Md.Code Ann., Health–Gen. II § 20–102 (2000 Repl.Vol. & 2003 Supp.). Thus, in the absence of a provision to the contrary, and on the facts presented, we hold that a minor's consent is relevant for purposes of determining civil liability.

█ Because it is not impossible, as a matter of law, for a sexually battered minor to meet the third element of the assumption of the risk test, in a suit against a defendant other than the actual abuser, that she voluntarily confronted the risk of her injuries, we must determine whether the court was correct in finding that, as a matter of law, the element was met.[8]

█ In the present case appellant agreed, as we discuss above, to leave school property with Shields. Appellant testified that she knew Shields' intentions when she left the school

---

8. We are not presented with, and do not decide, the question of whether assumption of the risk is available as a defense against the actual abuser.

property, but that she went with him "[b]ecause . . . he said he was going to come get me from school and call me out of class." She also agreed, on cross-examination that, "[she] knew that the purpose or reason why [Shields] was going to pick [her] up from school was to take [her] to [his] house and have sex[.]" She also agreed that she left with Shields not because she was frightened, but because "what Mr. Shields was doing made [her] feel good a little bit, or made [her] feel special[.]" There is no evidence that appellant was frightened or under duress when she left the school property; in fact, appellant testified that she was not "scared" until Shields instructed her to remove her clothes. We also note the trial court's recitation of the many avenues of escape available to appellant prior to her arrival at Shield's home.

This Court's words in *Casper, supra,* are especially appropriate:

> We are acutely aware of the tremendous emotional, physical and economic burdens placed on the two families in this case as a result of this accident. The need to find a means to ease those burdens does not, however, justify straining the principles of negligence to achieve a more palatable result. The injury of a child stirs the sympathetic concerns of all. As the Court of Appeals has sadly recognized, "[a]dventurous youth always has, and ever will, furnish its full death and accident toll." *Ahrens,* 168 Md. at 628, 179 A. 169. As lamentable as that is, upon the complaints and inferences deducible therefrom, this tragedy cannot be attributed to actionable negligence on the part of appellees.

*Casper, supra,* 71 Md.App. at 475, 526 A.2d 87.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED;**

**COSTS TO BE PAID BY APPELLANT.**