*Six Flags America, L.P. v. Stephanie Gonzalez-Perdomo,* Case No. 1620, September Term 2019. Opinion filed on December 16, 2020, by Berger, J.

NEGLIGENCE - DUTY OF POSSESSOR OF LAND - INVITEE - DUTY TO WARN OF OPEN AND OBVIOUS CONDITION

In a slip-and-fall case involving an invitee who was injured after falling on a bridge at an amusement park, the evidence overwhelmingly established that the bridge was openly and obviously wet, but the dangerous condition caused by the wet surface was not so clearly open and obvious as to permit no reasonable factfinder to conclude otherwise and the defendant was not entitled to judgment as a matter of law.

NEGLIGENCE - DUTY OF POSSESSOR OF LAND - INVITEE - DUTY TO WARN OF OPEN AND OBVIOUS CONDITION - JURY INSTRUCTION

The trial court's decision not to propound requested instructions regarding the open and obvious defense constituted reversible error when the requested instructions were accurate statements of law drawn from reported Maryland opinions, the requested instructions were applicable under the facts of the case, the instructions were not fairly covered in the instructions actually given, and the appellant demonstrated probable prejudice as a result of the trial court's decision not to propound these instructions.

NEGLIGENCE - DUTY OF POSSESSOR OF LAND - INVITEE - DUTY TO WARN OF OPEN AND OBVIOUS CONDITION - VERDICT SHEET

The trial court's decision to decline to include a question regarding the open and obvious doctrine on the verdict sheet was not an abuse of discretion. The determination of whether the dangerous condition was open and obvious was relevant to the jury's determination of whether Six Flags was negligent, but the trial court was not required as a matter of law to ask the jury to separately issue written findings as to a particular factual finding that would have influenced the jury's finding as to a particular element of negligence.

Circuit Court for Prince George's County
Case No. CAL-18-15218

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1620

September Term, 2019

_____

SIX FLAGS AMERICA, L.P.

v.

STEPHANIE GONZALEZ-PERDOMO

_____

Berger,
Arthur,
Zarnoch, Robert A.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Berger, J.

_____

Filed: December 16, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This case is before us on appeal from a jury verdict in the Circuit Court for Prince George's County awarding damages in a negligence action. The negligence lawsuit was filed by Stephanie Gomez-Perdomo (the "appellee") on behalf of her minor son, Daniel Gomez-Gonzalez, after he suffered a slip and fall injury on a pedestrian bridge at an amusement park operated by Six Flags America LP ("Six Flags").

Six Flags presents two issues for our consideration on appeal, which we have rephrased slightly as follows:

> I.     Whether the circuit court erred by denying Six Flags' motion for summary judgment and/or motions for judgment at trial.
>
> II.     Whether the circuit court erred and/or abused its discretion by declining to propound a jury instruction on the "open and obvious" condition defense and/or by declining to include a question regarding this defense on the verdict sheet.

For the reasons explained herein, we shall hold that the circuit court did not abuse its discretion by denying Six Flags' motions for summary judgment and/or for judgment at trial, nor did the court abuse its discretion by declining to issue a verdict sheet containing the question requested by Six Flags. We shall, however, hold that the circuit court abused its discretion by declining to propound two of Six Flags' requested jury instructions. Accordingly, we shall reverse the judgment of the circuit court and remand for a new trial.

**FACTS AND PROCEEDINGS**

On July 22, 2015, then-ten-year-old Daniel Gomez-Gonzalez ("Daniel") visited a Six Flags amusement park (the "amusement park" or the "park") in Upper Marlboro, Maryland. During his visit to the park, Daniel was injured after he fell while crossing a

wet wooden pedestrian bridge near the Shipwreck Falls ride.[1]  On May 17, 2018, Daniel's mother, Stephanie Gomez-Perdomo, filed a complaint in the Circuit Court for Prince George's County alleging, *inter alia*, that Six Flags "allowed water from a water ride in the amusement park, which it knew or should have known would and did continuously splash and accumulate water on the floor of the walkway of a nearby wooden bridge, which was constantly wet and dangerously slippery when wet . . . which created a dangerous slipping/tripping hazard on the walkway of the wooden bridge."

Following discovery, Six Flags filed a motion for summary judgment on August 9, 2019.  Six Flags asserted that the undisputed facts demonstrated that the wet and slippery condition of the bridge was "open and obvious," and, therefore, Six Flags owed no duty to warn or cure the alleged dangerous condition.  For this reason, Six Flags contended that the appellee's claim failed as a matter of law.  The trial court denied Six Flags' motion for summary judgment.

At trial, the appellee first presented testimony from amusement park safety expert Kenneth Vondriska.  Mr. Vondriska testified that, in connection with his involvement in this case, he visited the park and assessed the bridge where Daniel fell.  He concluded, based upon the photographs that he had reviewed as well as his on-site inspection, that water was allowed to stay on the walkway and that "[d]uring the course of the operation [of the amusement park] there was water in and around the bridge that was not removed,

---

[1] The cause of Daniel's fall was disputed at trial.  Six Flags asserted that Daniel's fall was due to a hip displacement caused by a preexisting hip condition, while the appellee's position was that Daniel fell due to the slippery condition of the bridge.

2

or was not dissipated or there was nothing protecting the walkway." Mr. Vondriska further testified that the signage provided at the bridge was "inadequate." There was a sign at the entrance to the bridge warning visitors that the walkway was wet,[2] but the sign was, in Mr. Vondriska's characterization, "a smaller sign" that was located "about eight to nine feet above the walking surface." Mr. Vondriska explained that he would have recommended that "two signs" be placed "more at eye level." Mr. Vondriska further testified that there was no non-skid material placed on the bridge, although there was non-skid material installed on the nearby exit bridge from the Shipwreck Falls ride. Mr. Vondriska further testified that there was no yellow paint marking the transition from the asphalt to the wooden bridge surface. On cross-examination, Mr. Vondriska acknowledged that the standing water on the bridge was visible and that nothing was obscuring the water on the wooden bridge.

The appellee presented additional testimony from Shirley Foster, the family friend who accompanied Daniel to the park on the day of the fall. Ms. Foster explained that she was walking "a little bit in front" of Daniel when they walked onto the bridge, so she did not see him fall. After hearing Daniel "yelling and screaming," she "turned back and realized that he was on the floor." Ms. Foster testified that she was aware that the bridge was located in a "splash zone area" because of the splashing water from the Shipwreck Falls ride. Ms. Foster further testified that she was able to see the flooring of the bridge as she approached it and that she observed that the bridge was obviously wet. Ms. Foster

---

[2] The sign said, "CAUTION WET FLOOR" in both English and Spanish.

"believe[d] [that the ride had] just splashed" before Daniel's fall. She further explained that there was water "splashing while [Daniel] was on the ground."

Daniel, who was fourteen years old by the time of trial, also testified. He testified that he and Ms. Foster walked toward the wooden bridge on the way to the Superman ride. Daniel testified that he did not see any warning sign in the area, nor did he know that the bridge would be wet, nor did he see any yellow paint on the ground leading up to the bridge. Daniel was not looking at the ground before he fell, but, after he fell, he felt that it was very wet around him. Daniel was in pain after he fell, and Ms. Foster called for help. Eventually, Daniel was put in a wheelchair and taken to a room at the park. After his injury, Daniel was able to return to sports, but he explained that he was unable to move as quickly when moving in certain ways. Daniel testified that he did not have any continuing leg pain, but he did walk with a limp.

Excerpts of deposition testimony from Six Flags' three corporate designees, Bradley Cole McClain, Troy Shortridge, and Spencer Lucas, were also played for the jury. All three corporate designees testified that the operation of the adjacent Shipwreck Falls ride caused water to repeatedly and continuously splash an abundance of water onto the wooden bridge. The corporate designees further testified that this condition is plainly visible to all visitors to the amusement park.

After the plaintiff's case was presented, Six Flags moved for judgment. Six Flags argued, *inter alia*, that the appellee had not proved a *prima facie* case of negligence because the evidence unequivocally demonstrated that the wet condition of the bridge was open and

4

obvious, and, accordingly, Six Flags had no duty to warn or cure the condition. The circuit court denied the motion.

During Six Flags' case in chief, the jury heard testimony from Jasmine Taylor, the Director of Human Resources and Safety for the amusement park. At the time of Daniel's fall, Ms. Taylor was employed as the Loss Prevention Supervisor for the Amusement Park. Ms. Taylor testified that the bridge is "very wet" when the Shipwreck Falls ride is in operation. Ms. Taylor testified that there had been matting on the decking of the bridge in prior years, but the matting had been removed when the bridge was rebuilt some years back. It was Ms. Taylor's understanding that the matting was removed because it presented a trip hazard. Ms. Taylor acknowledged on cross-examination that there was no non-slip coating put on the bridge after the matting was removed.

With respect to the caution sign posted at the bridge, Ms. Taylor explained that the sign was required to be mounted between eighty and 120 inches above the ground to comply with Americans with Disabilities Act Guidelines. She testified that the sign was three feet wide by eight inches tall and was located ninety-eight inches off the ground. Ms. Taylor further testified that a yellow stripe is painted on the ground to warn of a change in elevation and not to warn of a wet condition. Ms. Taylor testified that the total attendance at the amusement park over the past fourteen years was over fourteen million people and there had been no other reported slip and fall injury on the bridge at any time, nor had the park been party to any other lawsuit arising out of any incident on the bridge.

At the conclusion of the case, Six Flags renewed its motion for judgment. The trial court denied the motion. The court then turned to the issue of jury instructions. After

5

considering argument from the parties, the trial court declined to propound four of Six Flags' requested instructions. The four requested instructions concerned the open and obvious defense. The trial court's instructions to the jury included the pattern jury instructions on negligence, proximate cause, invitee status, and premises liability.

Six Flags also requested that the open and obvious defense issue be presented to the jury via a specific question on the verdict sheet. The trial court declined to use Six Flags' proposed special verdict sheet. Instead, the verdict sheet asked the jury to determine: (1) whether Six Flags was negligent; (2) whether Daniel was contributorily negligent; (3) whether Daniel assumed the risk; and (4) what damages, if any, to award.[3] The jury found that Six Flags was negligent and that Daniel was not contributorily negligent and had not assumed the risk. The jury awarded the appellee $45,000.00 in non-economic damages. Six Flags noted a timely appeal.

Additional facts shall be discussed as necessitated by our consideration of the issues before us on appeal.

## DISCUSSION

## I.

The first issue before us on appeal is whether the circuit court erred by denying Six Flags' motion for summary judgment and motions for judgment. For the reasons we shall explain, we shall hold that the circuit court did not err by denying Six Flags' motion for summary judgment and motions for judgment.

---

[3] The appellee sought only non-economic damages.

*A.*     *Standard of Review*

The entry of summary judgment is governed by Maryland Rule 2-501, which provides:

> The court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law.

We review a trial court's grant of a motion for summary judgment *de novo*, and we construe all "reasonable inferences that may be drawn from the undisputed facts against the moving party." *Mathews v. Cassidy Turley Md., Inc.*, 435 Md. 584, 598 (2013). With respect to a denial of a motion for summary judgment, however, the trial court's ruling is more discretionary. *Estate of Castruccio v. Castruccio*, 247 Md. App. 1, 60 (2020) ("[I]n Maryland, a trial court may exercise its discretionary power to deny a motion for summary judgment even if the moving party has met the technical requirements for summary judgment – i.e., even if the moving party has shown that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law."); *Dashiell v. Meeks*, 396 Md. 149, 164 (2006) ("Although, ordinarily, when there is no dispute of material fact, a trial court does not have any discretionary power when granting summary judgment it does, nonetheless, exercise discretion when affirmatively denying a motion for summary judgment or denying summary judgment in favor of a full hearing on the merits."). The denial of summary judgment "involves not only pure legal questions but also an exercise of discretion as to whether the decision should be postponed until it can be supported by a complete factual record." *Dashiell*, *supra*, 396 Md. at 164. Accordingly, "on appeal, the

7

standard of review for a denial of a motion for summary judgment is whether the trial judge abused his discretion and in the absence of such a showing, the decision of the trial judge will not be disturbed." *Id.* at 165.

The same standard of review applies for a motion for judgment notwithstanding the verdict and a motion for judgment at the close of the evidence. *Univ. of Maryland Med. Sys. Corp. v. Gholston*, 203 Md. App. 321, 329 (2012). For both motions, we consider "whether on the evidence presented a reasonable fact-finder could find the elements of the cause of action by a preponderance of the evidence." *Id.* We "assume the truth of all credible evidence on the issue and any inferences therefrom in the light most favorable to the [appellee], the nonmoving part[y]." *Lowery v. Smithsburg Emergency Med. Serv.*, 173 Md. App. 662, 683 (2007). "Consequently, if there is any evidence, no matter how slight, that is legally sufficient to generate a jury question, the case must be submitted to the jury for its consideration." *Id.* (quoting *Tate v. Bd. of Educ. of Prince George's County*, 155 Md. App. 536, 545 (2004)).

B.    *Six Flags Was Not Entitled to Judgment as a Matter of Law*

Six Flags asserts that it was entitled to judgment as a matter of law because the wet condition of the bridge was "open and obvious," and, therefore, Six Flags owed no duty to warn of or cure the wet condition. We are not persuaded.

In order to recover damages in a negligence action, a plaintiff bears the burden of proving: "1) that the defendant was under a duty to protect the plaintiff from injury, 2) that the defendant breached that duty, 3) that the plaintiff suffered actual injury or loss, and 4) that the loss or injury proximately resulted from the defendant's breach of the duty."

8

*Marrick Homes LLC v. Rutkowski*, 232 Md. App. 689, 698 (2017) (quoting *Rowhouses, Inc. v. Smith*, 446 Md. 611, 631 (2016)). "In Maryland, it is well-established premises liability law that the duty of care that is owed by the owner of property to one who enters on the property depends upon the entrant's legal status." *Rehn v. Westfield Am.*, 153 Md. App. 586, 592 (2003) (quoting *Rivas v. Oxon Hill Joint Venture*, 130 Md. App. 101, 109 (2000)). In the instant case, there is no dispute that Daniel was an invitee at Six Flags and that Six Flags owed the duty to exercise ordinary care to keep the amusement park safe.

Although a business owner must exercise ordinary care to keep property safe, Six Flags, as a business owner, was "not [the] insurer[] of [its] customers' safety, and no presumption of negligence arises merely because an injury was sustained on [Six Flags'] premises." *Rehn*, *supra*, 153 Md. App. at 593 (quoting *Giant Food, Inc. v. Mitchell*, 334 Md. 633, 636 (1994)). Daniel, as an invitee, had "a duty to exercise due care for his . . . own safety." *Tennant v. Shoppers Food Warehouse Md. Corp.,* 115 Md. App. 381, 389 (1997). "This includes the duty to look and see what is around the invitee." *Id.* A property owner "has no duty to warn an invitee of an open, obvious, and present danger." *Id.* (citing *Casper v. Chas. F. Smith & Son, Inc.*, 316 Md. 573, 582 (1989)). At issue in this appeal is whether the dangerous condition of the bridge was "open and obvious" as a matter of law.

The parties agree that Six Flags owed a duty to exercise ordinary care in the operation of the amusement park but, to some extent, dispute whether the determination of whether the danger was open and obvious is a matter for the court's determination or for the jury's. Six Flags correctly identifies the issue of the existence of a duty as a matter of law for the court's determination, citing *Doe v. Pharmacia & Upjohn Co., Inc.*, 388 Md.

9

407, 414-15 (2005). The appellee agrees that the question of whether a duty exists is a legal question for the court's determination but asserts that the question of whether a particular condition constitutes an open and obvious hazard excusing such a duty is a question of fact for the jury's determination. In its reply brief, Six Flags concedes that although the question of whether a condition is open and obvious is "often a question of fact," it argues that it can "certainly become a question of law for the court when the material facts and reasonable inferences are not in general dispute." We agree with the position articulated by Six Flags in its reply brief, but we frame it somewhat differently. We must determine whether there are disputed material facts precluding a finding that the dangerous condition was open and obvious as a matter of law and upon which a jury could have reasonably determined that the danger was not open and obvious and, accordingly, that Six Flags had a duty to warn of and/or cure the condition.

Six Flags asserts that the evidence presented at trial clearly established that the wet condition of the bridge was open and obvious. Six Flags points to the testimony of Ms. Foster, who testified that nothing was obstructing the view as she and Daniel approached the bridge. Six Flags further emphasizes that Daniel acknowledged that there was water on the bridge and that his back was wet after he fell. The appellee's expert witness, Mr. Vondriska, testified that there was visible standing water on the bridge and that there was nothing obstructing the view of water on the wooden bridge. For these reasons, Six Flags contends that it was entitled to judgment as a matter of law because no reasonable jury could find that Six Flags had a duty to warn of or cure the open and obvious wet condition of the bridge.

10

Based upon our review of the record, we agree with the trial court that Six Flags was not entitled to judgment as a matter of law. To be sure, witnesses for both parties testified that the wet condition of the bridge was visible. It does not necessarily follow, however, that the slippery condition of the bridge was obvious. It is reasonably conceivable that a visitor to the amusement park may have perceived the water on the wooden walkway without appreciating the danger created by the wet surface. The jury may have believed that a visitor could have concluded that the bridge was unlikely to be slippery despite the wet condition. Indeed, Mr. Vondriska testified that there was non-skid material installed on the nearby exit bridge from the Shipwreck Falls ride but no non-skid material installed on the bridge where Daniel fell and was injured. Although we agree with Six Flags that the evidence overwhelmingly established that the bridge was openly and obviously wet, we disagree with Six Flags that the dangerous condition caused by the wetness was so clearly open and obvious as to permit no reasonable factfinder to conclude otherwise.

We are not persuaded by Six Flags' attempt to analogize this case to the circumstances presented in *Casper*, *supra*, 316 Md. at 573. *Casper* involved two children who suffered permanent brain injury after falling through ice into a partially frozen stream and being submerged in freezing waters. *Id.* at 574-75. The Court of Appeals held that there was no duty to warn or cure the dangerous condition, explaining that "[b]odies of water like the stream involved in this case have historically and consistently been afforded distinctive treatment in the law relating to landowners' liability." *Id.* at 581. The Court adopted the "open and obvious danger rationale," which had not been previously adopted

11

in Maryland, and reasoned that "the doctrine of open and obvious danger permits the landowner to assume, for the purposes of fulfilling his duty to others, that children of sufficient age to be permitted to come upon the property without supervision will appreciate the panoply of ordinary dangers signaled by the presence of water." *Id.* at 582. This case involved not a naturally occurring body of water, which has inherent dangers recognized under the law, but a wooden walkway in an amusement park where, a jury could reasonably find, a visitor may assume that pedestrian walkways are maintained in a manner that would prevent them from becoming unreasonably slippery even when wet.

Six Flags asserts that this case is similar to the case of *Gellerman v. Shawan Rd. Hotel Ltd. P'ship*, 5 F. Supp. 2d 351 (D. Md. 1998), in which the United States District Court for the District of Maryland, applying Maryland law, entered summary judgment in favor of the defendant in a slip and fall case. In *Gellerman*, the plaintiff was walking across a raised concrete median and fell when she stepped down from the raised median to the surface of the parking lot. *Id.* at 353. The "alleged defect in the curb/sidewalk joint was the existence of a small space between the horizontal plane of the curb and the adjoining sidewalk, seemingly less than an inch, coupled with, at the position where [the plaintiff] fell, a separation, in the form of an expansion joint, in the concrete curb, clearly intended to be there incident to the construction and installation of the curb." *Id.* The plaintiff was unable to "describe how she fell, or even whether her foot came into contact with the curb." *Id.* The trial court, having "carefully reviewed the parties' memoranda and exhibits, including photographic depictions of the location of the occurrence," determined that "the condition of the curb/sidewalk joint on defendants' premises was open and obvious, and

12

that Maryland law does not allow recovery under the circumstances presented in this case." *Id.* at 354.

First, we observe that the federal district court's analysis in *Gellerman* is not binding on this Court. "An opinion of a federal district court is not binding on the circuit court or on this Court, but at most might be a persuasive authority." *Selective Way Ins. Co. v. Nationwide Property & Cas. Ins. Co.*, 242 Md. App. 688, 731 (2019). If "the reasoning which supports the court's opinion fails to persuade, the opinion is no authority at all." (internal quotations omitted) (cleaned up). In our view, the *Gellerman* opinion has limited persuasive value. We are unable to examine the evidence upon which the trial court in *Gellerman* based its determination that the curb was so open and obvious as to permit no reasonable fact-finder to conclude otherwise. Furthermore, we find it notable in the present case that Six Flags had applied some type of non-skid coating or treatment on some walkways or bridges in the amusement park, while the bridge at issue in this case did not have a non-skid treatment.

For these reasons, we hold that the determination of whether the slippery condition of the bridge constituted an open and obvious danger was not a question of law for the court. The material facts and reasonable inferences that could be drawn therefrom were such that a reasonable jury could conclude otherwise. Accordingly, we hold that the trial court did not abuse its discretion by denying Six Flags' motion for summary judgment and by denying Six Flags' motions for judgment at trial.

Six Flags further contends that the circuit court erred by declining to propound its requested jury instructions regarding the open and obvious defense. We agree with Six Flags that the trial court's decision not to propound certain requested instructions constitutes reversible error.

Six Flags requested that the trial court instruct the jury on the open and obvious defense and submitted the following four requested instructions addressing the issue:[4]

> Requested Jury Instruction No. 24:
>
> Open and Obvious Condition
>
> There is no obligation to protect an invitee against conditions or dangers which are known or which are so obvious and apparent that one may reasonably be expected to discover them.
>
> *Tennant v. Shoppers Food Warehouse Md. Corp.*, 115 Md. App. 381, 393 (1997).
>
> Requested Jury Instruction No. 25:
>
> Open and Obvious Condition
>
> The owner or occupier of land has no duty under the law to warn an invitee of an open, obvious, and present danger and it is well established under Maryland law that an invitee harmed by an open and obvious condition is ordinarily not entitled to any recovery for his injuries.
>
> *Casper v. Charles F. Smith & Sons, Ind.*, 316 Md. 573, 582 (1989).
>
> Requested Jury Instruction No. 26:

---

[4] The citations below were included with the requested jury instructions requested by Six Flags.

Open and Obvious Condition

"An 'open and obvious condition' is where the condition and risk are apparent to and would be recognized by a reasonable person in the position of a visitor, exercising ordinary perception, intelligence, and judgment."

65A C.J.S. Negligence § 639 (West 2009).[5]

Requested Jury Instruction No. 27

Open and Obvious Condition - Objective Standard

The question of whether there is an open and obvious condition is not dependent on the subjective knowledge or age or mental status of the invitee; rather, there is an objective standard: whether a reasonable invitee would know or should have known of the condition and risk given its open and apparent nature.

*Lloyd v. Bowles*, 260 Md. 568, 572 (1971) ("If the injured person knew or should have known of the dangerous condition, there is no right to recovery. *Finzel v. Mazzarella*, 248 Md. 227, 230, 235 A.2d 726 (1967), the reason for the latter ruling being that the storeowner's liability is based on a presumption that he has greater knowledge concerning the dangerous condition than the invitee. *Ludloff v. Hanson*, 220 Md. 218, 224, 151 A.2d 753 (1959).")"

The trial court declined to give the four non-pattern jury instructions requested by Six Flags.[6]

Instead, the trial court instructed the jury by reading the pattern instructions on negligence, proximate cause, contributory negligence, assumption of risk, invitee status,

---

[5] The requested instruction cited 65A C.J.S. Negligence § 639 (West 2009), which has since been replaced by 65A C.J.S. Negligence § 741 (West 2020).

[6] Six Flags argued in its opening statement that the condition of the bridge was open and obvious. After the trial court declined to propound an instruction on the open and obvious doctrine, Six Flags did not argue the issue in closing.

15

and premises liability.  Specifically, the trial court instructed the jury on these matters as follows:

> Negligence is doing something that a person using reasonable care would not do or not doing something that a person using reasonable care would do.  Reasonable care means that caution, attention or skill, a reasonable person would use under similar circumstances.  The care exercised by a reasonable person varies according to the circumstances and the danger that is known or should be appreciated by a reasonable person.  Therefore, if the foreseeable danger increases, a reasonable person acts more carefully.
>
> For the plaintiff to recover damages, the plaintiff's injuries must result from and be a reasonably foreseeable consequence of the defendants' negligence.  There may be more than one cause of an injury.  That is several negligent acts may work together to cause, to cause the injury.  Each person whose negligent act is a substantial factor in causing an injury is responsible.
>
> A plaintiff cannot recover damages if the plaintiff's negligence is the cause of the injury.  The defendant has the burden of proving by a preponderance of the evidence that the plaintiff's negligence was a cause of the plaintiff's injury.
>
> A child is not expected to use the same degree of care as an adult.  A child is held to that degree of [c]are ordinarily exercised by children of similar age, intelligence, experience and development under the same circumstances.
>
> A plaintiff cannot recover damages if the plaintiff has assumed the risk of an injury.  A plaintiff assumes the risk of an injury if that person knows and understands or must have known and understood the risk of an existing danger and voluntarily chooses to encounter that danger.  The duty of the owner or possessor of property depends on the injured person's status on the property.
>
> An invitee is a person who was invited or permitted to be on another's property for purposes related to the owners' or occupier's business.  The duty owed to an invitee is to use

16

> reasonable care to see that those portions of the property that the invitee may be expected to use are safe.

"When we review a trial court's grant or denial of a requested jury instruction, we apply the highly deferential abuse of discretion standard." *Woolridge v. Abrishami*, 233 Md. App. 278, 305 (2017) (citations and quotations omitted). In this context, when determining whether the trial court abused its discretion, we consider "(1) whether the requested instruction was a correct statement of the law; (2) whether it was applicable under the facts of the case; and (3) whether it was fairly covered in the instructions actually given." *Id.* (quoting *Keller v. Serio*, 437 Md. 277, 283 (2014)). "[T]he trial judge is required to give a requested instruction that correctly states the applicable law and that has not been fairly covered in other instructions." *Fleming v. State*, 373 Md. 426, 432 (2003). "In a civil case, a legal error in a jury instruction does not necessarily mandate reversal. To overturn a jury verdict, a jury instruction must not only be incorrect legally, but also prejudicial." *Armacost v. Davis*, 462 Md. 504, 524 (2019). In a civil case such as this one, the complaining party must demonstrate "that prejudice was not just possible, but probable, in the context of the particular case." *Id.*

Applying these factors to the instructions at issue in this appeal, we first consider whether the four instructions requested by Six Flags were correct statements of law. Requested Jury Instruction No. 24 was nearly a verbatim quotation from *Tennant*, *supra*, 115 Md. App. at 393 (quoting W. Page Keeton, *et al.*, Prosser and Keeton on the Law of Torts, § 61, at 427 (5th ed.1984)). It is, therefore, an accurate statement of law. Similarly,

Six Flags' Requested Jury Instruction No. 25 was nearly a verbatim quotation from *Casper*, *supra*, 316 Md. at 582, and cannot be said to be an inaccurate statement of law.

Six Flags Requested Jury Instruction No. 26 provided a definition of an "open and obvious condition" and was drawn from the Corpus Juris Secundum legal treatise, specifically from 65A C.J.S. Negligence § 639 (West 2009), which was subsequently replaced by 65A C.J.S. Negligence § 741 (West 2020). The Corpus Juris Secundum is a secondary source not binding upon the Maryland courts, and, to our knowledge, Maryland courts have not previously expressly adopted the definition of "open and obvious condition" set forth in the cited source. The instruction is not necessarily an incorrect statement of law, but it is not as fully supported by the cited authority as the previous two instructions requested by Six Flags.

Requested Jury Instruction No. 27 is similarly not entirely supported by the authority cited by Six Flags as the basis of the requested instruction. In *Lloyd v. Bowles*, 260 Md. 568, 571 (1971), the Court of Appeals explained that "[i]f [an] injured person knew or should have known of the dangerous condition, there is no right to recovery . . . [because] the storeowner's liability is based on a presumption that he has greater knowledge concerning the dangerous condition than the invitee." Six Flags asserts, based upon this citation, that the jury should have been instructed that "[t]he question of whether there is an open and obvious condition is not dependent on the subjective knowledge or age or mental status of the invitee; rather, there is an objective standard: whether a reasonable invitee would know or should have known of the condition and risk given its open and apparent nature." In this appeal, we shall not delve into whether this statement

18

is consistent or inconsistent with Maryland law. Nonetheless, it is, in our view, not such an obvious statement of Maryland law supported by the cited authority that the trial court's failure to issue the instruction would constitute an abuse of discretion.[7]

Having determined that Six Flags' Requested Jury Instructions No. 24 and 25 were correct statements of Maryland law, we next consider whether the instructions were applicable under the facts of the case and fairly covered in the instructions actually given by the trial court. Based upon our review of the record, we are persuaded that Requested Jury Instructions No. 24 and 25, both of which advised the jury that there is no obligation to warn of or protect against an open and obvious condition, were generated by the evidence presented at trial. The obviousness of the wet and potentially slippery condition of the bridge was hotly debated at trial, and witnesses for both sides presented testimony regarding whether they were able to perceive the wet condition of the bridge. As we discussed *supra* in Part I of this opinion, the evidence was not so overwhelming as to establish that the dangerous condition was open and obvious as a matter of law, but the evidence was more than sufficient to generate the issue for the jury's consideration. Furthermore, our review of the record leads us to conclude that Requested Jury Instructions No. 24 and 25 were not otherwise fairly covered in the instructions actually given by the

---

[7] The appellee asserts that Requested Jury Instruction No. 27 is an incorrect statement of law because, under Maryland law, the objective standard, as applied to children, reflects "the child's age, mental capacity, experiences, and circumstances." *Kelly v. McCarrick*, 155 Md. App. 82, 95 (2004). *Kelly* does not address the open and obvious doctrine. Rather, it discusses the objective standard in the context of an assumption of risk defense.

trial court. The jury was not instructed as to whether there was or was not a duty to warn of and/or cure an open and obvious potentially dangerous condition.[8]

For these reasons, we are persuaded that the trial court was required to propound Six Flags' Requested Jury Instructions Nos. 24 and 25. *Fleming*, *supra*, 373 Md. at 432 ("[T]he trial judge is required to give a requested instruction that correctly states the applicable law and that has not been fairly covered in other instructions."). Moreover, in light of the evidence presented at trial and the testimony from witnesses for both parties that the wet condition of the bridge was visible to park guests, we hold that Six Flags has demonstrated probable prejudice as a result of the trial court's decision not to propound these instructions. *Armacost*, *supra*, 462 Md. 504, 524 (2019). ("In a civil case, a legal error in a jury instruction does not necessarily mandate reversal. To overturn a jury verdict, a jury instruction must not only be incorrect legally, but also prejudicial . . . The complaining party must demonstrate "that prejudice was not just possible, but probable, in

---

[8] Indeed, the trial court read the pattern jury instruction about the duty to an invitee owed by a possessor of land. *See* Maryland Civil Pattern Jury Instructions - Civil ("MPJI-Cv") 24:3 (2019) ("The duty owed to an invitee is to use reasonable care to see that those portions of the property that the invitee may be expected to use are safe."). The pattern instruction, however, is incomplete, as is apparent from the comment to the instruction itself. As we have explained, pursuant to *Casper*, 316 Md. at 582, and *Tennant*, 115 Md. App. at 389, a possessor of land has the duty to protect an invitee from injury caused by an unreasonable risk that the invitee would be unlikely to perceive in the exercise of ordinary care for his or her own safety, and about which the owner knows or could have discovered in the exercise of reasonable care. We encourage the Standing Committee on Pattern Jury Instructions of the Maryland State Bar Association to address this lack of clarity in MPJI-Cv 24:3.

the context of the particular case."). Accordingly, we hold that the trial court abused its

discretion by failing to instruct the jury regarding the open and obvious doctrine.[9]

## III.

The final issue before us is whether the trial court erred and/or abused its discretion

by declining to include a question regarding the open and obvious nature of the dangerous

condition on the verdict sheet.[10] We perceive no error with regards to the verdict sheet.

Maryland Rule 2-522 addresses jury verdicts and specifically addresses jury

verdicts containing written findings. The rule provides:

> The court may require a jury to return a verdict in the form of
> written findings upon specific issues. For that purpose, the
> court may use any method of submitting the issues and
> requiring written findings as it deems appropriate, including
> the submission of written questions susceptible of brief
> answers or of written forms of the several special findings that
> might properly be made under the pleadings and evidence. The
> court shall instruct the jury as may be necessary to enable it to
> make its findings upon each issue.

Md. Rule 2-522(b)(2)(A). Although the trial court has, pursuant to Md. Rule 2-522, "the

authority to design submission to the jury and to format the jury's findings," the court is

not required to submit a verdict sheet in a particular format. "[A] court's use of a particular

---

[9] We note that the trial court was not necessarily required to propound Six Flags' Requested Jury Instructions No. 24 and 25 verbatim; nonetheless, the trial court was required to issue instructions that fairly covered the content of the requested instruction and accurately reflected the law.

[10] It is not strictly necessary that we address the verdict sheet issue in light of our determination that the trial court abused its discretion by declining to propound two of Six Flags' requested jury instructions. Nonetheless, we shall address this issue in order to provide guidance to the trial court on remand.

21

format will not be reversed absent an abuse of discretion." *Applied Indus. Techs. v. Ludemann*, 148 Md. App. 272, 287 (2002). An abuse of discretion occurs "where no reasonable person would share the view taken by the trial judge." *Brown v. Daniel Realty Co.*, 409 Md. 565, 601 (2009).

In this case, we cannot say that the trial court's decision to decline to include a question regarding the open and obvious doctrine on the verdict sheet was an abuse of discretion. The determination of whether the dangerous condition was open and obvious was relevant to the jury's determination of whether Six Flags breached a duty, and, therefore, was relevant to the jury's determination of whether Six Flags was negligent. In our view, the trial court was not required as a matter of law to ask the jury to separately issue written findings as to a particular factual finding that would have influenced the jury's finding as to a particular element of negligence. We, therefore, hold that the trial court did not abuse its discretion by declining to include a question addressing the open and obvious doctrine on the verdict sheet.

> **JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.**