*Jacqueline Cador v. YES Organic Market Hyattsville Inc.*, No. 0898, September Term 2020, Opinion by Moylan, J.

**HEADNOTES:**

**THE ROLE OF INFERENCE; THE RISK OF NON-PERSUASION – THE CASE AT HAND – WHAT IS A "DISPUTE"? – STANDARD OF REVIEW – TWO OSTENSIBLE BEACONS OF ALARM – THE FATE OF CONTRIBUTORY NEGLIGENCE SEALED THE FATE OF ASSUMPTION OF RISK – CONTRIBUTORY NEGLIGENCE – THE UNAMBIGUOUS "CAUTION: WET FLOOR" SIGN – THE SITE OF THE ACTUAL FALL – A YELLOW MOP BUCKET – A TWO-STAGE INFERENTIAL ROCKET – A. STAGE ONE: THE VISIBILITY OF THE YELLOW MOP BUCKET – 1. THE ALLURE OF EYE-CATCHING MERCHANDISE – 2. THE INFERENCE THAT WHAT COULD HAVE BEEN SEEN MUST HAVE BEEN SEEN IS NOT COMPELLING – B. STAGE TWO: WHAT STORIES DID THE MOP BUCKET HAVE TO TELL? – 1. THE ABSENCE OF REINFORCING WARNINGS – 2. THE TWILIGHT ZONE – 3. CONFLICTING INFERENTIAL MESSAGES – THAT VERSION OF THE EVIDENCE MOST FAVORABLE TO THE PLAINTIFF**

Circuit Court for Prince George's County
Case No. CAL19-05154

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 0898

September Term, 2020

_____

JACQUELINE CADOR

V.

YES ORGANIC MARKET HYATTSVILLE
INC.

_____

Graeff,
Shaw,
Moylan, Charles E., Jr.
 (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Moylan, J.

_____

Filed: February 1, 2022

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

The subject is contributory negligence. The specific focus is on the difference, qualitative rather than quantitative, between the evidentiary predicate that requires a judicial ruling of contributory negligence, as a matter of law, and the evidentiary predicate that permits a jury finding of contributory negligence, as a matter of fact. This difference is not simply one between more or less of the same thing. Quantity is not the issue. Nor is the difference one between an adequate case of contributory negligence and a stronger, perhaps much stronger, case. The difference is rather between a case of contributory negligence built on disputed evidence and one built on undisputed evidence. Quantity is not the differentiating factor. Even a mountain of evidence may be disputed; a molehill of evidence may be undisputed. The difference is that the resolution of the dispute, large or small, requires factfinding. Undisputed evidence, by contrast, requires no factfinding.

## The Role Of Inference; The Risk Of Non-Persuasion

A judge, as legal referee, does not engage in factfinding. In cases of undisputed evidence, the judge need not do so, for there are no disputes to be resolved. For some rulings as a matter of law, moreover, even apparent disputes may sometimes be finessed, as the judge accepts as fact that version of the evidence most favorable to the non-moving party. Such a version of the evidence is something not in dispute. The evidence, as it indisputably exists or is presumed to exist, either is or is not contributory negligence, as a matter of law. The judge, therefore, may make a legal decision as to it by way of Summary Judgment or a judgment in the course of the trial or a judgment N.O.V. without engaging

in factfinding. Appellate review, moreover, is not deferential. Where things are determined as a matter of law, the appellate court will make its own legal determination, de novo.

In the case of disputed evidence, on the other hand, factfinders play a very different role. Factfinders exist for the very purpose of resolving disputes. Unlike the judge-as-legal-referee, the factfinders have wider discretionary options. Appellate review, moreover, will be very deferential to almost anything that the factfinders decide, just as it will be deferential to the trial judge's legal decision to let issues go to the factfinders. The factfinders may be persuaded to find in one direction or in the other by the parties to the case. That burden of persuasion, to whomever it belongs, incurs the risk of non-persuasion.

Figuring prominently in the exercise of persuasion, along with such factors as the credibility of witnesses and the logical cogency of the competing propositions, is the phenomenon of drawing inferences. The factfinder may be persuaded that from the existence of Fact A, one may infer the existence of Fact B, the ultimate fact itself. It is here, however, that the risk of non-persuasion looms large. Inferences may be drawn, but they may also be declined. Inferences may be contradicted by counter-inferences. This inferential swirl and counter-swirl is a world wherein the judge-as-legal-referee does not operate. The judge's rulings are existential; the jury's findings, on the other hand, may be inferential. For the judge, it is not a case of "may be;" it is a case of "is" or "is not." The jury is not so limited.

In the case before us, the sole question is, "Was the existence of contributory negligence, yea or nay, a question of law for the judge or a question of fact for the jury?"

The question might also be phrased, "Was there a genuine dispute as to a material fact?" Was it a case for the judge? Or was it a case for the jury?

## The Case At Hand

At approximately 9:00 P.M. on September 21, 2016, the plaintiff-appellant, Mrs. Jacqueline Cador (the plaintiff), along with her husband and her daughter, went shopping in a grocery store owned and operated by the defendant-appellee, Yes Organic Market Hyattsville Inc. (the Market). The Market was still open, but it was approaching closing time. While shopping, the plaintiff slipped and fell on a portion of the floor that had recently been mopped by an employee of the Market. The plaintiff required partial knee replacement surgery.

In the Circuit Court for Prince George's County, the plaintiff sued the Market for negligence. The Market filed a motion for Summary Judgment based on the affirmative defenses of both 1) contributory negligence and 2) the assumption of risk. On October 6, 2020, the trial judge granted the motion for Summary Judgment in favor of the Market on both grounds. The plaintiff has filed the present appeal.

The motion for Summary Judgment was filed pursuant to Maryland Rule of Procedure 2-501(f), which provides in pertinent part:

> The court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law.

(Emphasis supplied.)

## What Is A "Dispute"?

3

A brief word is in order about the "genuine dispute" as to a "material fact" that will defeat Summary Judgment. The notion of a "dispute" is not limited to a testimonial dispute about the very physical existence of a predicate fact in order to launch a possible inference. It may also be a "dispute" about the inferential process itself. Even from an undisputed predicate fact, shall a permissible inference be drawn or shall it be declined? Which of several possibly contradictory inferences shall be drawn? There are obviously critically important "disputes" about which inferences to draw or to decline. Such "disputes", as Rule 2-501(f) clearly states, are not matters to be resolved by Summary Judgment.

## Standard Of Review

In <u>Matthews v. Cassidy Turley Maryland, Inc.</u>, 435 Md. 584, 598, 80 A.3d 269 (2013), Judge McDonald laid out for the Court of Appeals the standard of review when the appellate court examines such a grant of Summary Judgment:

> Under the Maryland Rules, a circuit court may grant summary <u>judgment if there is no dispute as to material fact</u> and the moving party is entitled to judgment as a matter of law. Maryland Rule 2-501(f). <u>The court is to consider the record in the light most favorable to the non-moving party and consider any reasonable inferences that may be drawn from the undisputed facts against the moving party.</u> <u>Because the circuit court's decision turns on a question of law, not a dispute of fact</u>, an appellate court is to review whether the circuit court was legally correct in awarding summary judgment without according any special deference to the circuit court's conclusions.

(Emphasis supplied.) *See also* <u>Ross v. Housing Authority of Baltimore City</u>, 430 Md. 648, 666-67, 63 A.3d 1 (2013); <u>Six Flags America, L.P. v. Gonzalez-Perdomo</u>, 248 Md. App. 569, 580, 242 A.3d 1143 (2020).

## Two Ostensible Beacons Of Alarm

4

The contributory negligence issue before us is a limited one. The Market points to no direct conduct on the part of the plaintiff that would, in and of itself, have constituted either contributory negligence or the assumption of risk. The Market points rather to two physical objects in the grocery that were at one time or another within the range of vision of the plaintiff before she fell. The Market argues that the plaintiff must be deemed to have seen one or both of those admonitory beacons and that she was thereby put on notice that the flooring in the Market was dangerous. The Market's argument is that the inference was compelling that the plaintiff had been put on notice and that heightened caution on her part was, therefore, necessary and that she negligently failed to exercise that heightened caution.

In granting Summary Judgment in favor of the Market, the trial judge made the assumption that, in exposing its customers to floors that were wet from recent mopping, the Market had, indeed, been negligent. The trial judge nevertheless bought the further argument made by the Market:

> I think that <u>the unrefuted, undisputed evidence</u> – and admitted that your client said that there was a bucket afterwards. <u>She said she didn't notice it at the time, but you can see her walking directly past it; I think that this is a quintessential example of both assumption of the risk and contributory negligence</u>.

> So I think I have to – <u>I don't have any choice but to grant the motion for summary judgment</u> on those grounds, not on the other ones…but <u>on the grounds of assumption of the risk and contributory negligence</u>.

(Emphasis supplied.)

## The Fate Of Contributory Negligence
## Sealed The Fate Of Assumption Of Risk

This argument before us can be further limited in one important respect. It will be convenient to confine our analysis to contributory negligence alone and not to burden the

analysis with a further consideration of the assumption of risk. Both affirmative defenses, to prevail, would require us to conclude that the plaintiff must have seen the warning signs and must, therefore, have been consciously aware of the danger of walking incautiously in the store. Assumption of risk, however, would require us to go one step further and to conclude that the plaintiff, aware of the risk, made the conscious and deliberate decision to ignore that risk. That goes one additional step beyond mere negligence. If our decision should be in favor of the plaintiff on the subject of contributory negligence, however, as indeed it will be in this case, that decision necessarily would produce a similar result with respect to assumption of risk.

If the permitted inference that the plaintiff was aware of the danger cannot be drawn as a matter of law, then the further inference built upon that inference – that the plaintiff deliberately opted to ignore that known danger – could also not be drawn. That inferential launching pad for assumption of risk would have been held to be infirm. Ergo, our analysis forthwith need only be with respect to contributory negligence. *See generally*, Schroyer v. McNeal, 323 Md. 275, 280-83, 592 A.2d 1119 (1991).

### Contributory Negligence

"An important element of contributory negligence is the foreseeability of harm." Santoni v. Schaerf, 48 Md. App. 498, 506, 428 A.2d 94 (1981). As the Court of Appeals explained in Sanders v. Williams, 209 Md. 149, 152, 120 A.2d 397 (1956):

> As is true of primary negligence, one measure of contributory negligence is the need, in a given situation, to anticipate danger. Presence or absence of reasonable foresight is an essential part of the concept. One is charged with notice of what a reasonably and ordinarily prudent person would have foreseen and so must foresee

6

<u>what common experience tells may</u>, in all likelihood, <u>occur, and to anticipate and guard against what usually happens.</u>

(Emphasis supplied.)

The leading Maryland authority on contributory negligence is the opinion of Judge O'Donnell for the Court of Appeals in <u>Menish v. Polinger Company</u>, 277 Md. 553, 356 A.2d 233 (1976). The plaintiff in that case slipped and fell on a patch of ice on a walkway beneath the marque of an apartment building owned by the defendant. The jury found in favor of the plaintiff. The trial judge, however, entered a judgment N.O.V. in favor of the defendant on the ground that the plaintiff had been contributorily negligent as a matter of law in not being aware of the ice and not being especially careful as a result. The Court of Appeals reversed. With respect to contributory negligence, the Court of Appeals explained:

> Before the doctrine of contributory negligence can be successfully invoked, <u>it must be demonstrated that the injured party</u> acted, or <u>failed to act, with knowledge and appreciation</u>, either actual or <u>imputed of the danger of injury</u> which his conduct involves. <u>When one who</u> knows and appreciates, or <u>in the exercise of ordinary care should know and appreciate, the existence of danger</u> from which injury might reasonably be anticipated, <u>he must exercise ordinary care to avoid such injury; when</u> by his voluntary acts or omissions <u>he exposes himself to danger of which he had</u> actual or <u>imputed knowledge</u>, he may be guilty of contributory negligence.

277 Md. at 560-61. (Emphasis supplied.)

The <u>Menish v. Polinger</u> opinion also shed significant light on how an appellate court reviews the question of what a plaintiff knew or should have known of a dangerous condition. Such admonitory knowledge, even if not actually perceived, may sometimes be imputed to a plaintiff when the supporting factual predicate is so "distinct, prominent and decisive" that reasonable minds could not differ with respect to it and with respect to its mandatory message:

> The rule to be applied, in determining whether the facts justify a holding that the plaintiff was guilty of contributory negligence as a matter of law, is that <u>the act</u> (or omission) <u>so relied on must be distinct, prominent and decisive, and one about which reasonable minds would not differ in declaring it to be negligence.</u>

277 Md. at 562. (Emphasis supplied.)

When, on the other hand, the factual predicate is not unequivocal but emits permitted inferences in different and random directions, the legal conclusion is quite otherwise. A case of possible contributory negligence that satisfies the burden of production is not necessarily a case of absolute contributory negligence, as a matter of law. It may be, but it need not be:

> <u>The question of contributory negligence must be considered in the light of all the inferences favorable to the plaintiff's case that may be fairly deduced from the evidence.</u> <u>Where</u> there is a conflict of evidence as to material facts relied on to establish contributory negligence, or <u>more than one inference may be reasonably drawn therefrom, the question should be submitted to the jury.</u> In order that a case may be withdrawn from the jury on the ground of contributory negligence, the evidence must show some prominent and decisive act which directly contributed to the accident and which was of such a character <u>as to leave no room for difference of opinion thereon by reasonable minds.</u>

277 Md. at 563. (Emphasis supplied.) *See also* <u>Six Flags America v. Gonzalez-Perdomo</u>, 248 Md. App. 569, 580, 242 A.3d 1143 (2020).

In calibrating that degree of care for one's own safety employed by the plaintiff, <u>Menish v. Polinger</u>, 277 Md. at 559, also made it clear that the criterion is that of an "ordinarily prudent person" and not that of "a very cautious person."

> In measuring contributory negligence<u>, the standard of care to be used</u> as the criterion <u>is that of an ordinarily prudent person</u> under the same or similar circumstances, <u>not that of a very cautious person.</u>

(Emphasis supplied.)

8

In holding that the equivocal evidence in the case before it should have gone to the jury rather than have been decided by the Court, the Court of Appeals, 277 Md. at 569, quoted with approval from W. Prosser, Torts, (4th ed. 1971), Sect. 65, p. 420:

> In the ordinary case, where enough uncertainty can be conjured up to make an issue as to what the reasonable man would have done, that issue goes to the jury.

(Emphasis supplied.)

### The Unambiguous "Caution: Wet Floor" Sign

In the case now before us, the plaintiff slipped on an area of the floor that had recently been mopped. There was no direct evidence that the plaintiff was actually aware that the floor was wet. After falling, to be sure, she felt that the floor around her was, indeed, wet. The Market's theory of contributory negligence is based upon its argument that there were two warning signs from which knowledge might be imputed to the plaintiff that the floor was, indeed, wet. The actual deposition testimony by witnesses submitted to the court was very inconclusive and unenlightening. There were, however, two brief video clips from two separate store security cameras (identified in this case as "Video One" and "Video Two") that show the plaintiff 1) in the Market before the fall and 2) actually falling. The respective videos show the two ostensible warning signs that, the Market argues, should have put the plaintiff on imputed notice that the floor was wet and dangerous.

Video One shows the plaintiff when she, along with her husband and daughter, first entered the Market. She was standing and talking to one of the employees. This was in a large and relatively open common area where cashiers and check-out counters are located. In this area there was located (and visible on Video One) a formal warning sign alerting

9

customers to the possible presence of a wet floor. It read, "Caution: Wet Floor" in large and prominent lettering. The Market acknowledged the importance of warning customers that mopping is in progress. The Market acknowledged that the "Wet Floor" signs should be placed where they are visible by customers.

As far as the evidence established, there was only one such "Wet Floor" sign that figured in this case and it was placed in this larger common area where the check-out counters were located. The Market, however, had four or five other "Wet Floor" signs, if they were needed. No other "Wet Floor" signs, however, were shown to have been deployed. Although the plaintiff never acknowledged having seen this "Wet Floor" sign, she was standing very close to it when talking to the employee. The inference was arguably permitted that the plaintiff should have seen it and, therefore, would have been alerted to its warning. Who, however, is entitled to draw such an inference? We will get to that. What, moreover, was that exact warning that may have been given?

### The Site Of The Actual Fall

The fall, however, did not occur in that area of the Market where the check-out counters were located. A number of aisles (8 or 10 or more) radiated off that larger (almost lobby-like) epicenter of a check-out area. The actual fall occurred down one of those aisles, almost immediately after the plaintiff finished her conversation with the employee and proceeded down that aisle. Significantly, there was no "Wet Floor" sign present in that aisle, although the Market acknowledged that it had more than one such "Wet Floor" sign.

We agree with the plaintiff that a single "Wet Floor" sign in the check-out area did not adequately warn all customers that the entire Market was a "danger zone" from wet

10

floors. The Market's argument that the plaintiff had been put on notice that the aisle in which she fell (and presumably all other aisles) were potentially wet and dangerous from the single warning in the check-out area will not prevail. The Market had other signs, but no other signs were shown to have been deployed and no area other than the check-out area was apparently formally designated as a "danger zone." What matters is that the aisle in which the plaintiff fell was not so designated. Something more would be required calling for heightened caution on the part of the plaintiff.

## A Yellow Mop Bucket

That "something more" turned out to be a mop bucket, a yellow mop bucket. Video Two, available to the court and viewed by it, showed the plaintiff walking down one of the aisles and falling almost immediately as she started down the aisle. Very near the spot where the plaintiff fell, Video Two showed something on the floor at the side of the aisle. This Court has viewed Video Two more than once and it is virtually impossible (for us, at any rate) to determine just what that ambiguous object was. It was only the deposition given by the plaintiff's husband that rescued that ambiguous object on the floor from remaining forever nothing more than a shadowy blob. His deposition recited:

Q.    And did you observe anything in the vicinity of her fall such as chairs or displays from the floor, wet floor signs, any other kind of signs, anything in the vicinity where Jackie fell?

A.    I can't recall anything of that degree. There was a, I believe there was a mop bucket in the vicinity, but other than that, I can't recall anything else.

Q.    So you remember a yellow – what color was it?

A.    I would say yellow because your recollection would be better than mine.

11

Q.      Don't do it based on mine.

A.      Okay. No. <u>It was just a mop bucket</u>. I remember a mop bucket.

Q.      You remember seeing a mop bucket?

A.      Yes. <u>And the handle</u>.

Q.      Do you remember where the mop bucket was located?

A.      <u>I believe it was near or even in the aisle nearest to where she was</u>.

(Emphasis supplied.)

A yellow mop bucket? What inferences, like the evils erupting from Pandora's Box, came flying out of that yellow mop bucket? Did they establish contributory negligence as a "distinct, prominent and decisive" predicate for an unchallengeable rule of law or did they fly out chaotically and in infinitely contradictory directions? Was the medley of possible inferences proper material for a declaratory judgment, as a matter of law? Or was it rather grist for the infinite variety of a jury's factfinding mill? This, of course, is the nub of the case. Did the facts congeal into a compelled and monolithic conclusion as an irrefutable rule of law? In such a case, Summary Judgment would, of course, have been permissible. Or did they splinter into a congeries of inferential possibilities? In such a case, only a factfinding jury, not the judge, may weigh the respective likelihoods.

### A Two-Stage Inferential Rocket

To accept the Market's theory of contributory negligence, we must posit a two-stage inferential rocket lifting off from the launching pad of the yellow mop bucket. Before the first stage burns out, it must generate the permissive inference that the plaintiff actually saw the yellow mop bucket. The plaintiff testified that she did not see it. Nonetheless, the

12

Market argues that from its very positioning in her range of vision, we may draw an inference that she must have seen what was there to be seen. Arguably, such a permitted inference might be drawn. Or, at least, it might be drawn by one permitted at such a stage to draw inferences. But might not such a permitted inference also be declined? If so, of course, Summary Judgment would not be appropriate as a matter of definition. There would be a "dispute" as to the drawing of the inference.

Even if the inferential first stage were successfully completed, however, what then is required in the second stage? From the permitted inference that the plaintiff saw the yellow mop bucket, we will, arguendo at least, impute to her the knowledge that the mop bucket was there at her lower right side as she walked by it. We must then, as the inferential second stage takes flight, further impute to her the message which, the Market insists, was being communicated by the mop bucket. That more subtle message, the Market further insists, was indistinguishable from the direct warning issuing from the "Caution: Wet Floor" sign. It, in effect, seconded the motion. Quite aside from the question of whether that inference could be declined, was it possible that other and perhaps contradictory inferences were also emanating from the mop bucket? If so, once again, Summary Judgment would not have been appropriate. The question of which of two contradictory inferences to draw is, ipso facto, a "dispute."

## A. Stage One: The Visibility Of The Yellow Mop Bucket

Let us examine first the inferential first stage, the inference that the plaintiff must have seen the mop bucket, notwithstanding her denial of having seen it. It was a non-

descript bucket on the floor at her right hand side as she walked by it. It was hardly the second coming of the Ancient World's Lighthouse at Alexandria.

Even in instances where the plaintiff actually walks into or trips over an item in the aisle of a grocery store, including objects squarely in the middle of the aisle, the cases generally do not hold that, as a matter of law, the plaintiff must be held to have seen the obstructing object. To be sure, the plaintiff may have seen it and a jury might so decide. It is, however, a question of fact for the jury, not a question of law for Summary Judgment.

## 1. The Allure Of Eye-Catching Merchandise

There is a respectable line of cases that absolve a customer in certain retail stores from the obligation of looking down at the floor, lest he or she be deemed guilty of contributory negligence. The Court of Appeals described this circumstance of visionary absolution in <u>Chalmers v. Great Atlantic and Pacific Tea Co.</u>, 172 Md. 552, 559, 192 A. 419 (1937):

> <u>There is a substantial difference between the kind and degree of vigilance which a traveler on a street must exercise to avoid danger and that which is required of a customer in a store. The storekeeper expects and intends that his customers shall look</u> not at the floor but <u>at the goods displayed which he displays to attract their attention</u> and which he hopes they will buy. <u>He at least ought not to complain, if they look at the good displayed instead of at the floor</u> to discover possible pitfalls, obstructions, or other dangers, or if their purchases so encumber them as to prevent them from seeing dangers which might otherwise be apparent.

(Emphasis supplied.)

This Court has also recognized the phenomenon of the distracting charms of attractive merchandise displays as a contraindication of contributory negligence. In <u>Diffendal v. Kash and Karry Service Corp.</u>, 74 Md. App. 170, 536 A.2d 1175 (1988), Judge

14

Rosalyn Bell reviewed a number of out-of-state cases that have recognized the same phenomenon. She then announced for this Court, 74 Md. App. at 176:

> A reasonable inference is that <u>an ordinarily prudent person</u>, while shopping in a supermarket, <u>with her attention drawn to the selection of merchandise displayed in an open food freezer, could</u> make the same error of judgment, and <u>trip over a cart placed in an aisle near the displays of merchandise.</u>

(Emphasis supplied.)

Neither the Court of Appeals in <u>Chalmers</u> nor this Court in <u>Diffendal</u> held that the failure of a shopper to look down notwithstanding the distraction could not give rise to a permitted inference of contributory negligence. They simply held that the presence of the distraction was enough to deny the failure to look down any compelling force as a matter of law. In <u>Diffendal</u>, the permitted inference of contributory negligence was present, but so too was the permitted inference of non-contributory negligence:

> <u>More than one inference is permitted</u> under the circumstances of this case. <u>It could be inferred that</u>, under these circumstances, <u>Mrs. Diffendal was not negligent in failing to have noticed the cart over which she fell.</u>

<u>Id.</u> (Emphasis supplied.)

<u>Kasten Construction Co. v. Evans</u>, 260 Md. 536, 542, 273 A.2d 90 (1971) spoke to the same effect:

> If more than one inference can be drawn from facts in respect of the issue of contributory negligence, it must be submitted to the jury.

### 2. The Inference That What Could Have Been Seen Must Have Been Seen Is Not Compelling

As the plaintiff started to walk down the aisle in which she fell, the yellow mop bucket was sitting, approximately hip high, on the side of the aisle to her right. She walked

15

by it and testified that she never saw it. The Market protests that, as a matter of law, she must have seen it. In granting Summary Judgment in favor of the defendant Market, the court ruled that the knowledge of having seen it would be imputed to her.

This Court, however, held quite to the contrary in <u>G.C. Murphy Co. v. Greer</u>, 75 Md. App. 399, 541 A.2d 996 (1988). In that case, a shopper in a department store fell over an empty plastic carton left in an aisle by one of the store's employees. The customer suffered a fractured hip. In the negligence action that followed, the store claimed that the customer had been contributorily negligent, but the jury found in favor of the customer. The store moved for a judgment N.O.V., claiming that, in his "failure to observe and avoid the empty plastic carton," the customer had been contributorily negligent, as a matter of law. The trial judge denied the N.O.V. motion and the store appealed to this Court. As Judge Karwacki framed the issue before us, 75 Md. App. at 400-01, it was precisely the issue now before us in the present case:

> <u>This appeal</u> followed the court's denial of appellant's motion for judgment N.O.V. and <u>is concerned solely with the issue of whether Coy Greer was contributorily negligent as a matter of law.</u>

(Emphasis supplied.)

In the <u>G.C. Murphy</u> case, the empty plastic carton was sitting right in the middle of the aisle. The department store's argument there is indistinguishable from the Market's argument in the present case:

> <u>Appellant asserts that Coy Greer was contributorily negligent as a matter of law because he tripped over an empty carton that was in plain view.</u> Appellant argues that Mr. Greer was required at all times to observe the floor of the department store aisle upon which he walked and to avoid objects obstructing his safe passage. <u>It</u>

16

concludes that Greer's failure to do so constituted negligence which contributed to his fall as a matter of law.

75 Md. App. at 402. (Emphasis supplied.)

This Court first set out the stern test that must be satisfied before a court will be permitted to take the issue of contributory negligence away from the jury:

> Before a case may be taken from a jury on the ground of contributory negligence, the evidence must demonstrate a prominent and decisive act or omission of the plaintiff about which reasonable minds would not differ. The prominent and decisive act or omission must reveal that the injured party was or should have been aware of a dangerous situation and failed to exercise ordinary care to protect himself.

75 Md. App. at 402. (Emphasis supplied.)

We then explained how the failure in that case to observe the obstacle remained an issue of fact for the jury:

> Mr. Greer's failure to observe the plastic carton was not such a prominent and decisive omission which reasonable minds would uniformly declare to be negligence. The question of whether a plaintiff, in the exercise of reasonable care for his or her own safety, should have been looking at the ground instead of keeping a general eye toward where he or she is going is ordinarily a question for the jury.

75 Md. App. at 403. (Emphasis supplied.)

We then explained how such failures to observe and to avoid are generally deemed to be questions of fact left to the jury:

> Maryland appellate Courts have therefore refused to hold a plaintiff contributorily negligent as a matter of law where the plaintiff fails to observe and trips over or slips on some substance obstructing the clear passage of a store aisle.

75 Md. App. at 403. (Emphasis supplied.) *See also* Chalmers v. Great Atlantic & Pacific Tea Co., 172 Md 552, 558-59, 192 A. 419 (1937) (a carton containing canned goods); Grzboski v. Bernheimer-Leader Stores, 156 Md. 146, 149, 143 A. 706 (1928) (rubbish

17

pile); <u>Diffendal v. Kash and Karry Service</u>, 74 Md. App. 170, 174, 536 A.2d 1175 (1988) (a loading cart).

In the last analysis, we affirmed the trial judge's decision not to take the issue of contributory negligence away from the jury:

> <u>Whether Mr. Greer,</u> by looking to see where his wife and grandson were going instead of looking at the floor, <u>failed to exercise ordinary care to protect himself against dangers he should have anticipated was a question for the jury to resolve.</u>

75 Md. App. at 403. (Emphasis supplied.)

Any inquiry into the performance of this necessary first stage of the two-stage inferential rocket – the stage that permits the very threshold inference that the plaintiff even saw the yellow mop bucket – would inevitably produce the dubious response, "Houston, we have a problem!"

## B. Stage Two: What Stories Did The Mop Bucket Have To Tell?

Even having seen the yellow mop bucket, however, in and of itself establishes nothing. A distinct and necessary link in the same inferential chain required the further inquiry, "If so, what did seeing the mop bucket tell you? And why do you think that?" Was it some sort of warning or was it simply an uninspiring Still Life? What riddle did that tight-lipped sphinx of a mop bucket propound?

### 1. The Absence Of Reinforcing Warnings

Whatever message emanated from the yellow mop bucket was a self-contained message all of its own. It was not synergistically reinforced by the "Wet Floor" sign in another part of the Market. The Market acknowledged that it knew how to send a cautionary message when it deemed one to be necessary. It had more "Wet Floor" signs available, had

18

it needed them. There was no reason, therefore, for anyone to infer that an abandoned mop bucket was a further resounding or reechoing of the formal and deliberate message which the Market knew full well how to communicate. That, however, is what the Market suggests.

The Market's modest cautionary notice that there was a "Wet Floor" in the area where the check-out counters were located was not a general alarum bell that there were wet floors present everywhere throughout that large retail market. It was hardly a tocsin designed to "spread the alarm through every Middlesex village and farm."[1] Even if it could have been so interpreted as a possible matter of fact, it was certainly not that as a matter of law. If it radiated a message, what was the message's radius? The plaintiff and the Market obviously had different versions of that communicative radius. The plaintiff's version of the admonitory radius is that it was cramped and tightly localized. The Market's version is that it was sprawling and open-ended. Is that not in and of itself a "dispute" within the contemplation of Rule 2-501(f)?

The abandoned mop bucket, moreover, could actually be seen to have been the very antithesis of the "Wet Floor" sign, not a replication of it. The anti-contributory negligence inference, if any, could have been that the Market did not consider it necessary to post a "Wet Floor" sign in the aisle in question, because the floor was not wet and slippery in that aisle. To establish a genuine "dispute," the two inferences do not have to be equal in strength. They may be the "heavy favorite" and the "long shot." They simply have to exist

---

[1] Henry Wadsworth Longfellow, Paul Revere's Ride (1861).

19

within the same universe. If the same abandoned mop bucket was thus capable of sending out two contradictory inferences, is not a choice between those inferences necessary to resolve a "dispute" within the contemplation of Rule 2-501(f)?

## 2. The Twilight Zone

How does one best decide in that indeterminate realm wherein unusual and unexpected circumstances make questions of contributory negligence almost surrealistic? Such a surrealistic circumstance was before the Court of Appeals in Burkert v. Smith, 201 Md. 452, 94 A.2d 460 (1953), a case wherein a woman in the crowded entranceway of a busy tavern inadvertently stepped backward into an open stairwell leading down into a basement. In such a circumstance, when the question of contributory negligence "admitted of more than one reasonable answer," Chief Judge Sobeloff entitled such a quandary "the twilight zone:"

> At all events the question admitted of more than one reasonable answer. It falls into what has been termed **THE TWILIGHT ZONE**, neither entirely dark nor entirely light. It is not a case of contributory negligence as a matter of law.

201 Md. at 458. (Emphasis supplied.) In that "twilight zone," judges do not decide. Only juries do.

The Court reversed a directed verdict of contributory negligence against the woman and in favor of the tavern and left the issue for a jury. *See also* Long v. Joestlein, 193 Md. 211, 66 A.2d 407 (1949); Recreation Center Corp. v. Zimmerman, 172 Md. 309, 191 A. 233 (1937); Morgenstern v. Sheer, 145 Md. 208, 125 A. 790 (1924) (where it was held proper to have refused a directed verdict against a plaintiff who fell down an unguarded

elevator shaft despite his admission that there had been sufficient light in the adjacent hallway to enable him to see twelve feet ahead.)

It is clear that in that twilight zone, juries may properly make findings of contributory negligence as a matter of fact but judges should be reluctant to make rulings with respect to contributory negligence as a matter of law. This Court has consistently been in full agreement with that adjudicative assignment. In G.C. Murphy Co. v. Greer, 75 Md. App. 399, 402, 541 A.2d 996 (1988), we squarely held:

> The question of whether a plaintiff was contributorily negligent or assumed the risk is ordinarily one that should be answered by the finder of fact, rather than the court.

(Emphasis supplied.) *See also* Kasten Construction Co. v. Evans, 260 Md. 536, 541, 273 A.2d 90 (1971) ("Contributory negligence, like assumption of risk, is ordinarily a question for the jury."); Driver v. Potomac Electric Power Co., 247 Md. 75, 79, 230 A.2d 321 (1967) ("[U]sually it is neither advisable or practicable to enter a Summary Judgment in a tort action."); Robertson v. Shell Oil Company, 34 Md. App. 399, 403, 367 A.2d 962 (1977) ("As a general proposition, questions of primary and contributory negligence are for the jury."); Diffendal v. Kash and Karry Service Corp., 74 Md. App. 170, 173, 536 A.2d 1175 (1988) ("Ordinarily, contributory negligence is a question for the jury.").

### 3. Conflicting Inferential Messages

Assume for the moment, again arguendo, that the plaintiff had, indeed, taken notice of the yellow mop bucket sitting off to her lower right as she started down the aisle. What message, if any, did the mop bucket communicate to her? Or, more importantly, what conflicting messages might the mop bucket have communicated to her?

21

The mop bucket sat there sadly alone. Of what significance was it that no employee, charged with making use of that mop bucket, was in attendance? Had the mop bucket been placed there in advance, pending the arrival of the employee who had not yet arrived to begin his mopping chore? Or had the employee already finished his mopping assignment and gone off to other duties, leaving the empty bucket to be collected by others? In the first case, the floor would not yet have been mopped and would, therefore, not yet be wet. In the second case, the floor would already have been mopped and might still be wet. Are these not disputed inferences, disqualified from being used to support Summary Judgment or any other ruling, as a matter of law? This is a quintessential jury question.

Might not similarly conflicting inferences have arisen from the very placement of the yellow mop bucket? Within the scheme of the planned mopping operation, was that spot of placement the beginning of the aisle, where the mopping had not yet been done, or the end of the aisle, where the mopping operation had been completed? From an operation not yet begun, one might permissibly infer a still dry floor. From an operation recently completed, one might permissibly infer a floor that might still be wet. With respect to being a message of possible danger, do not those inferences contradict each other? If they do, this would have been, by definition, a jury question.

Just as the court did not know whether the yellow mop bucket was poised to go to work at the top of the aisle or was resting after a task well done at the bottom of the aisle, another element in that equation of uncertainty is whether there was water in the mop bucket. No one apparently knew, but the inferences fly forth in both directions. If the bucket was still full of water, the water was presumably not yet on the floor. If the water was no

longer in the bucket, it might already have been on a now slippery floor. As <u>Menish v. Polinger</u>, 277 Md. at 563, advised us:

> Where…<u>more than one inference may be reasonably drawn therefrom, the question should be submitted to the jury.</u>

(Emphasis supplied.)

From all that we do not know about the yellow mop bucket – why it was unattended, whether it was at the top of the mopping aisle or at the bottom of the aisle, whether it was or was not full of water – it is clear that the yellow mop bucket did not speak in this case with an undisputed and dispositive voice but with sphinxlike inscrutability. As it issued forth its multiplicity of messages for someone – judge or jury – to decipher, the yellow mop bucket was Hydra-headed, not monolithic. Summary Judgment was thus foreclosed.

### That Version Of The Evidence
### Most Favorable To The Plaintiff

In this case, the very existence of the yellow mop bucket was a very material fact. Whether the plaintiff ever saw the mop bucket was a very material fact. What message the mop bucket, if seen by the plaintiff, communicated to the plaintiff was a very material fact. As we have catalogued, there were numerous disputes with respect to those material facts.

What then does the caselaw tell us must be done? Faced with such disputes, the judge is enjoined, before making any decision as a matter of law, to take that version of the evidence most favorable to the non-moving party, in this case most favorable to the plaintiff. This is not a mere formulaic platitude, designed to be ritualistically intoned but then ignored. It is a blueprint to be applied and followed on a case-by-case basis.  In detail after detail, what was that most favorable version?

23

With respect first to the ambiguous "Wet Floor" sign in the general check-out area, that version most favorable to the plaintiff is that she did not see that sign. That version of the evidence could, of course, be rejected by a factfinder who could infer that she must have seen what was there to be seen. To draw such an inference, imputing knowledge to the plaintiff that she disclaims having, would contradict her sworn testimony to the contrary. That conclusion, moreover, would not be available to the judge because it self-evidently was not that version of the evidence most favorable to the plaintiff. That version of the evidence most favorable to the plaintiff was her sworn testimony. Even if the warning sign had been seen, arguendo, how sweeping was its message? That version of the evidence most favorable to the plaintiff is that it was a very localized message and did not apply to the more far-flung areas of the Market.

With respect to the yellow mop bucket itself, a factfinder might conclude that its message should be read in conjunction with the more express message from the check-out area. That, however, would not be a permitted conclusion as a matter of law because it would not be that version of the evidence most favorable to the plaintiff. The most favorable version of the evidence is that the two signs had nothing to do with each other.

The most favorable version of the evidence to the plaintiff is that she never saw the mop bucket. As a part of that most favorable version, the plaintiff was completely absolved of any responsibility to look down at the floor because she was distracted by the allure of the attractive merchandizing up on the shelves.

Even if, arguendo, the yellow mop bucket had been seen by the plaintiff, what version of its messages would have been that version most favorable to the plaintiff's case?

24

That most favorable version would have been that the mop bucket was unattended because the employee had not yet arrived who was scheduled to do the mopping operation. That most favorable version, moreover, would have been that the mop bucket sat at the top of the aisle waiting for the mopping to begin and not at the bottom of the aisle after the mopping had been concluded.

All of this might seem to be a terribly slanted narrative in favor of the plaintiff, perhaps outrageously so from the point of view of ultimate factfinders. This case, however, does not present a factfinding problem. It called for, by definition, a version of the evidence so slanted because that was the version of the evidence **MOST FAVORABLE** to the non-moving party. If this is not that version of the evidence most favorable to the plaintiff, what then, pray tell, would be a more favorable version? The answer is that in Summary Judgment cases, the deck is deliberately tilted against taking genuinely disputed issues away from the factfinding jury.

We are not suggesting for a moment that this case, at trial, would be a "slam dunk" for the plaintiff. We have no idea what factfinders may do with many of the possible disputes. We only know that the plaintiff did not deserve to lose by default before the burden of persuasion and the risk of non-persuasion had even begun.

**ORDER GRANTING SUMMARY JUDGMENT REVERSED AND CASE REMANDED FOR TRIAL. COSTS TO BE PAID BY APPELLEE.**

25

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/0898s20cn.pdf